PEOPLE v DENNY

Docket No. 43869. Submitted December 8, 1981, at Lansing.—Decided March 18, 1982. Leave to appeal applied for.

John Denny and his codefendant, Richard Green, were convicted of first-degree criminal sexual conduct and armed robbery. Their convictions were reversed by the Court of Appeals. *People v Denny,* 86 Mich App 40 (1978), and *People v Green,* 86 Mich App 142 (1978). They were retried, again in a joint trial, and were each convicted of first-degree criminal sexual conduct and unarmed robbery, Washtenaw Circuit Court, Patrick J. Conlin, J., and sentenced by Henry T. Conlin, J. Defendant Denny appeals, alleging that: (1) there was insufficient evidence that he had the requisite specific intent to commit a larceny, (2) denial of his motion to disqualify the trial judge was error, (3) the sentencing judge failed to consider his conduct in prison between the first and second trials, (4) the sentencing judge failed to comply with an alleged sentence bargain, and (5) the trial court erred in denying his motion for a separate trial. *Held:*

1. Based upon a review of the entire criminal transaction, there was sufficient evidence on which a rational trier of fact could find beyond a reasonable doubt that both defendants used force to accomplish the taking of the victim's money. There was sufficient evidence of the defendant's larcenous intent.

2. The basis upon which the motion to disqualify the trial judge was denied was insufficient to support the denial. However, the record contains no evidence of bias or prejudicial conduct on the part of the trial judge. Denny's constitutional

REFERENCES FOR POINTS IN HEADNOTES

[1] 30 Am Jur 2d, Evidence § 1172.

[2] 67 Am Jur 2d, Robbery §§ 10, 20, 23.

[3] 67 Am Jur 2d, Robbery § 15.

[4] 46 Am Jur 2d, Judges §§ 166, 169.
Disqualification of judge by state in criminal case, for basis of prejudice. 68 ALR3d 509.

[5] 60 Am Jur 2d, Penal and Correctional Institutions § 58.

[6] 75 Am Jur 2d, Trial § 17.

right to a fair trial was not impaired and reversal is not required.

3. The sentencing judge's failure to mention expressly that he was considering the defendant's prison conduct does not support the assertion that the judge either refused or failed to consider the prison conduct.

4. The record does not support the conclusion that the sentencing judge agreed to be bound by the terms of an alleged sentence agreement, which was in connection with similar charges brought in Wayne County.

5. The trial court did not abuse its discretion in denying the motion for a separate trial.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — SUPPORT FOR CONVICTION.

A court, when determining whether there is sufficient evidence to support a defendant's conviction, must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

2. ROBBERY — UNARMED ROBBERY — STATUTES.

The elements of unarmed robbery are: (1) the felonious taking of any property which may be the subject of larceny from the person or presence of the complainant, (2) by force and violence, assault or putting in fear, (3) while not armed with a dangerous weapon (MCL 750.530; MSA 28.798).

3. ROBBERY — INTENT — TRANSACTION ANALYSIS.

A "transaction" approach should be used to determine whether an individual possessed the requisite larcenous intent in a trial for robbery where a violent act precedes the taking; the entire larcenous transaction should be reviewed to determine if there is a continuity of intent between the forceful act and the taking; if so, a robbery conviction is possible.

4. CRIMINAL LAW — DISQUALIFICATION OF JUDGE — COURT RULES.

Generally, disqualification of a trial judge is required where the record discloses actual bias on the part of the judge; however, absent any other evidence of prejudice or bias, a judge's expression of his belief in a defendant's guilt alone will not require his disqualification (GCR 1963, 912.2).

5. CRIMINAL LAW — SENTENCING.

A sentencing court's failure to mention expressly at the sentencing proceeding that the court was considering the defendant's

conduct in prison, where the defendant was incarcerated following a prior conviction, does not support an assertion by the defendant that the court either refused or failed to consider the defendant's prison conduct.

6. CRIMINAL LAW — SEPARATE TRIALS.

   A decision on a motion by a codefendant for a separate trial is within the discretion of the trial court; a defendant moving for a separate trial must clearly, affirmatively and fully show that substantial rights will be prejudiced by a joint trial.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *James S. Sexsmith,* Assistant Prosecuting Attorney, for the people.

*Vincent D. Giovanni,* for defendant on appeal.

Before: MacKENZIE, P.J., and D. F. WALSH and M. F. CAVANAGH, JJ.

PER CURIAM. Defendant was charged in Washtenaw County with first-degree criminal sexual conduct, MCL 750.520b(1)(d); MSA 28.788(2)(1)(d), and armed robbery, MCL 750.529; MSA 28.797. He was tried jointly before a jury with his accomplice, Richard Green. On June 27, 1976, both defendants were convicted as charged and were subsequently sentenced to 50 to 75 years on the criminal sexual conduct offense and to life imprisonment on the robbery offense. In *People v Denny,* 86 Mich App 40; 272 NW2d 332 (1978), this Court reversed defendant's convictions. Defendant Green's convictions were also reversed in *People v Green,* 86 Mich App 142; 272 NW2d 216 (1978). Upon their joint retrial, both defendants were convicted of first-degree criminal sexual conduct, and unarmed robbery, MCL 750.530; MSA 28.798. Defendant Denny was sentenced to 50 to 75 years for the

criminal sexual conduct conviction and to 10 to 15 years for the unarmed robbery conviction.

A general statement of the facts underlying defendant's convictions was set forth in *People v Green, supra,* 145:

"The complaining witness and victim was picked up by defendant and his accomplice while she was hitch-hiking. She was taken to a building where she was forced to participate in acts of sexual intercourse and fellatio with both defendants. In the course of her abduction and the assault upon her, the victim was struck and injured. Prior to releasing the victim the defendants took, at knifepoint, what money she had. The victim also believed that at least one of her assailants was armed."

Supplemental facts will be discussed under the various allegations of error in this case. Defendant raises five issues on appeal.

First, defendant argues that his conviction for unarmed robbery should be reversed because there was insufficient evidence that he had the requisite specific intent to commit a larceny when the victim's property was taken from her.

In determining whether there is sufficient evidence to support a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979).

The elements of unarmed robbery are:

"(1) the felonious taking of any property which may be the subject of larceny from the person or presence of the complainant, (2) by force and violence, assault or putting in fear, (3) while not armed with a dangerous

weapon." *People v Spry,* 74 Mich App 584, 594; 254 NW2d 782 (1977).

In *People v LeFlore,* 96 Mich App 557; 293 NW2d 628 (1980), this Court adopted a "transaction" approach for the determination of whether an individual possesses the required larcenous intent under circumstances where the violent act precedes the taking. The Court stated:

"The larceny transaction should be viewed as a whole to determine the defendant's intent. *Sanders, supra [People v Sanders,* 28 Mich App 274; 184 NW2d 269 (1970)].

"We believe that this 'transaction approach' is appropriate for analyzing any larceny, particularly robbery, where the forceful act may greatly precurse or lag behind the taking. Both the armed and unarmed robbery statutes are clear that the forceful act must be *used to accomplish* the taking. See MCL 750.529; MSA 28.797, MCL 750.530; MSA 28.798, *People v Gould,* 15 Mich App 83; 166 NW2d 530 (1968). Unless there is a purposeful relationship between these two elements, the criminal episode is merely two isolated crimes of larceny and perhaps assault and battery. LaFave & Scott, Criminal Law, § 94, pp 701-702. See *Chamblis, supra,* at 425 *[People v Chamblis,* 395 Mich 408; 236 NW2d 473 (1975)]. The entire larcenous transaction should be reviewed to determine if there is a continuity of intent between the forceful act and the taking (or vice versa). If so, a robbery conviction is possible. See *People v Mitchell,* 32 Mich App 155; 188 NW2d 163 (1971). If not, there may merely be larceny from the person. *Chamblis, supra." People v LeFlore, supra,* 562.

In the present case the testimony established that defendant and his companion used force, violence and threats of violence against the victim throughout the entire criminal episode. Based on this evidence, a rational trier of fact could have

found beyond a reasonable doubt that their forceful acts were used to accomplish the taking of the victim's money. Therefore, there was suffcient evidence of defendant's larcenous intent.

Defendant next argues that reversible error occurred when his motion to disqualify the trial judge was denied.

GCR 1963, 912.2 and 912.3, provide, in part:

"A judge is disqualified when he cannot impartially hear a case, including a proceeding where the judge

\* \* \*

"(2) is personally biased or prejudiced for or against a party or attorney;

\* \* \*

"(c) Ruling. The challenged judge shall decide the motion or refer it for decision to another judge assigned by the state court administrator. If the challenged judge denies the motion, the challenging party may ask that the motion be referred for decision to another judge assigned by the state court administrator."

Generally, disqualification of a trial judge is required where the record discloses actual bias on the part of the judge. *People v Gibson (On Remand)*, 90 Mich App 792, 796; 282 NW2d 483 (1979). However, absent any other evidence of prejudice or bias, a judge's expression of his belief in a defendant's guilt alone will not result in his disqualification. *Kolowich v Ferguson*, 264 Mich 668; 250 NW 875 (1933), *People v Mexicott*, 288 Mich 671; 286 NW 121 (1939).

Prior to his retrial, defendant filed a motion to disqualify the trial judge. A hearing was held before an assigned judge. At the hearing, a minister testified that during a conversation with the trial judge after defendant's first trial the judge made several remarks which indicated that he was

prejudiced against defendant. At the conclusion of the hearing, the assigned judge denied defendant's motion on the grounds that: (1) the case was to be tried before a jury, and (2) the crowded court docket prohibited any reassignment to a different judge.

After reviewing the testimony at the hearing, we are inclined to agree that it would have been preferable for the trial judge to have disqualified himself and that the assigned judge should have granted defendant's disqualification motion. Certainly the crowded docket was an insufficient ground upon which to base the denial of defendant's motion. Nevertheless, we are not persuaded that defendant was denied his constitutional right to a fair trial. Reversal, therefore, is not required.

In discussing the denial of a motion to disqualify, the court in *Walker v State,* 241 Ark 300, 309; 408 SW2d 905, 911 (1966), made the following observations:

"The fact that a trial judge may have, or develop during a trial, a personal opinion as to the merits of the case does not make the trial court so biased and prejudiced as to require his disqualification in further proceedings. The mischief occurs when the trial court communicates to the jury by word or deed a personal bias, prejudice or animus toward the accused, causing the accused to be denied a fair and impartial trial. Of course, statements made by a trial court long before a jury panel is selected, and in no way communicated to the trial jury, would not constitute any such bias or prejudice in the conduct of the trial. Since the court actually proceeded to try this case, we review the record in the light of what actually transpired."

In the instant case defendant was tried by a jury. The evidence against him was substantial. Defendant has failed to allege that the trial judge

demonstrated any prejudice whatsoever at his retrial. At oral argument, defendant's counsel admitted that the record does not contain any evidence of bias on the part of the trial judge and that trial counsel could not say that he observed any nonverbal communication to the jury of the trial judge's prejudice against the defendant during any of the judicial proceedings. We have now carefully examined the record and cannot find any instance of prejudicial or discriminatory conduct by the trial judge or any suggestion of bias during the trial. Moreover, the offensive remarks were related primarily to the judge's feelings with regard to the appropriate punishment for the charged offenses. Defendant was not sentenced, however, by the trial judge. We conclude, therefore, that defendant's constitutional right to a fair trial was not impaired.[1]

Defendant next argues that he should be resentenced because the sentencing judge failed to consider his conduct in prison between the first and second trials. However, the record does not support defendant's contention. An updated presentence report, which covered defendant's period of incarceration between the two trials, was utilized by the sentencing judge. The judge's failure to mention expressly at the sentencing proceeding that he was considering defendant's prison conduct does not support defendant's assertion that the

[1] We are aware of the following statement made by this Court in *People v Lobsinger,* 64 Mich App 284, 286; 235 NW2d 761 (1975):

"We must look to the record for apparent prejudice on the part of the trial judge. The proper point of inquiry is at the time of trial. It is not enough to say that defendant received an error-free trial and therefore the record fails to demonstrate the trial judge's personal prejudice against defendant."

We note that the Court cites no authority for this statement and we are not persuaded that it is a correct statement of the law. Therefore, insofar as this statement is inconsistent with the position we have taken on this issue we decline to follow it.

judge either refused or failed to consider his behavior in prison. Under such circumstances, resentencing is not required.

Defendant further argues that he should be resentenced because the sentencing judge failed to comply with an alleged sentence bargain. We are not so persuaded. There is nothing in the record which supports the conclusion that the trial judge agreed to be bound by the terms of the agreement.

At the hearing on the motion to enforce the plea bargain defendant Denny and codefendant Green testified that they had been advised by their counsel that, if they pled guilty to similar charges in Wayne County Circuit Court, they would be allowed to plead guilty to the Washtenaw County charge and that the sentence imposed would be the same as those imposed in Wayne County and would be served concurrently. Neither defendant testified that they had received confirmation of this agreement from the Washtenaw County judge. Assistant Prosecutor Neil Juliar testified that he was present at an in-chambers conference at which Denny's defense counsel, Mr. Rekshan, proposed that Green and Denny be allowed to plead in accordance with the Wayne County agreement. The judge refused. Juliar then testified as to the ensuing conversation between the judge and Rekshan:

"Mr. Rekshan said, 'Judge, you told me you'd consider it.' Judge Conlin said, 'I know, I told you I'd consider it. I've considered it. I'm not going to do it.' "

This testimony does not support the conclusion that the Washtenaw County trial judge was a party to the Wayne County agreement. Neither due process, therefore, nor basic considerations of fair treatment require that we order specific performance of that agreement in Washtenaw

County. See *Santobello v New York,* 404 US 257; 92 S Ct 495; 30 L Ed 2d 427 (1971).

If the defendant pled guilty in the Wayne County cases on the mistaken assumption that he would also be allowed to plead in Washtenaw County and receive an identical and concurrent sentence, he may be entitled to withdraw the Wayne County pleas. Relief from those pleas, however, cannot be sought in this appeal.

Finally, defendant argues that the trial court erred in denying his motion for a separate trial. A decision on a motion for a separate trial is within the discretion of the trial court. MCL 768.5; MSA 28.1028.

In *People v Kramer,* 108 Mich App 240, 256; 310 NW2d 347 (1981), this Court stated:

> "A conclusionary statement of antagonistic defenses must be supported by an affidavit defining the inconsistencies between the defenses of the parties in order for this Court to find an abuse of discretion in not ordering separate trials. *People v Smith,* 73 Mich App 463; 252 NW2d 488 (1977), *lv den* 402 Mich 803 (1977). In *People v Gunter,* 76 Mich App 483, 489; 257 NW2d 133 (1977), this Court stated that upon moving for separate trials 'defendants must clearly, affirmatively and fully show that substantial rights will be prejudiced by a joint trial'."

At the hearing on the motion, defendant's counsel argued that a separate trial was necessary because the defenses of Denny and Green did "not necessarily coincide" and defendant needed "complete control over his own defense". However, defendant failed to detail any further the specific nature of the antagonistic defenses. Also, defendant did not file any affidavit in support of his conclusionary statement. We find no abuse of discretion in the trial court's denial of defendant's motion.

Affirmed.