PEOPLE v HEARN

Docket No. 90004. Submitted December 3, 1986, at Detroit. Decided April 3, 1987.

Douglas S. Hearn was charged with criminal sexual conduct in the first degree and armed robbery. His first trial in Recorder's Court of Detroit, James E. Roberts, J., resulted in a hung jury. On retrial, James R. Chylinski, J., presiding, the jury convicted defendant of criminal sexual conduct in the first degree and unarmed robbery. Defendant was sentenced to a prison term of from sixty to one hundred years on the criminal sexual conduct conviction and a concurrent term of from ten to fifteen years on the unarmed robbery conviction. Defendant appealed.

The Court of Appeals *held:*

1. Manifest injustice did not result from the failure of the trial court to instruct the jury that unarmed robbery could be found only if it found that defendant had a larcenous intent at the time that he with force and violence sexually attacked the victim and that only a larceny was shown if the intent existed only at the time that defendant demanded the money, since this robbery charge was not based on the force and violence portion of the statute but rather on the putting in fear portion of the statute. Since the trial court properly instructed the jury on an unarmed robbery based on putting the victim in fear, manifest injustice has not been shown.

2. The record fails to factually support the claim that the trial judge in the second trial refused to review the ruling of the trial judge in the first trial relative to impeachment of defendant by evidence of his prior convictions. Since the discretion of the trial court in the second trial was never evoked, there can be no abuse of discretion. The record fails to establish that the exercise of discretion by the trial judge in the first trial relative to the admission of the impeachment testimony resulted in manifest injustice.

3. The testimony relative to the operability of the vehicle

REFERENCES

Am Jur 2d, Criminal Law §§ 527, 538, 541.
Am Jur 2d, Robbery §§ 1, 3, 13-17, 18, 24, 28.
See the annotations in the Index to Annotations under Robbery; Sentence and Punishment.

allegedly used by defendant at the time of the crimes was proper rebuttal testimony which the prosecutor did not have to present in his case in chief.

4. The sixty-year minimum sentence imposed by the trial court was within the minimum sentence recommended by the sentencing guidelines of fifteen years to life. Accordingly there was no obligation for the trial court to set forth its reason for departing from the sentencing guidelines.

5. A sentencing court is not required to explain sua sponte how each variable used in determining the sentence was scored.

6. The presentence report complied with the statutory requirements.

Affirmed.

SHEPHERD, J., concurred in the affirming of the convictions, but would remand for a statement by the trial court as to why the trial court exceeded the recommenced minimum sentence of the sentencing guidelines. He would hold that the sentencing guideline range means that either a minimum sentence of fifteen years or a straight life sentence may be imposed unless the reasons for departure from the sentence recommendation are stated on the record.

1. ROBBERY — UNARMED ROBBERY — TAKING — INTENT.

Unarmed robbery is established where the victim complies with a demand for money out of a reasonable fear of injury which is based upon a prior act of violence by the defendant; where a robbery is based on the victim's being put in fear of injury because of a prior act of violence by the defendant, the larcenous intent need not exist at the time of the prior forceful act but rather it need only exist at the time of the taking of the property while the victim is in fear of injury (MCL 750.530; MSA 28.798).

2. CRIMINAL LAW — SENTENCING — SENTENCING GUIDELINES.

A minimum sentence of sixty years falls within the range established by the sentencing guidelines where the sentencing guidelines recommend a minimum sentence of fifteen years to life.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Brigid Vincent Marley,* Assistant Prosecuting Attorney, for the people.

*Mark R. Hall,* for defendant.

Before: DANHOF, C.J., and SHEPHERD and W. A. PORTER,* JJ.

PER CURIAM. Defendant's first trial ended in a hung jury. Upon a second jury trial, defendant was convicted of first-degree criminal sexual conduct, MCL 750.520b(1); MSA 28.788(2)(1), and unarmed robbery, MCL 750.530; MSA 28.798. Defendant was sentenced to a term of imprisonment of from sixty to one hundred years on the csc charge. On the unarmed robbery charge, defendant received a concurrent term of from ten to fifteen years.

The complainant was a passenger in an automobile that became disabled on an expressway. A man, whom the complainant later identified as defendant, stopped and offered help. Defendant convinced the complainant to go with him to a nearby gas station where he said a friend was working who would lend him tools. Defendant stated that the friend would be more likely to lend him the necessary tools to repair the car if one of the two women accompanied him as proof that there was in fact a disabled vehicle. After the complainant agreed to accompany the defendant, he drove to a dead end street. When she initially refused his demands, defendant produced a knife and held it to her throat. Some time during the sexual assault, the knife was removed from sight and not seen again. A short time after the conclusion of the assault, defendant asked the complainant for money, and she gave him three dollars. When defendant was not satisfied with that amount, the complainant signed her paycheck over to him. With respect to the taking of the money and the check, the information alleged armed

---

* Circuit judge, sitting on the Court of Appeals by assignment.

robbery. However, the jury found defendant guilty of the lesser included offense of unarmed robbery.

Defendant argues that the trial court improperly instructed the jury on the elements of unarmed robbery. Defendant argues that the unarmed robbery instruction was misleading and incomplete because it failed to inform the jury that there had to be a larcenous intent at the time of the assault and that the force and violence used to accomplish the sexual assault would not be sufficient to satisfy the force requirement of the unarmed robbery statute if the taking of the property was merely an afterthought. Defendant asserts that, if the jury had been properly instructed, it is likely defendant would have been convicted of a larceny crime no greater than larceny from a person, MCL 750.357; MSA 28.589.

Defendant did not object to the unarmed robbery instruction and reversal is therefore inappropriate unless manifest injustice has occurred. *People v Kelly,* 423 Mich 261, 271-272; 378 NW2d 365 (1985). We find that manifest injustice did not occur.

Larceny from a person is defined by statute, MCL 750.357; MSA 28.589, as follows:

> Any person who shall commit the offense of larceny by stealing from the person of another shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years.

Unarmed robbery is defined by statute, MCL 750.530; MSA 28.798, as follows:

> Any person who shall, by force and violence, or by assault or putting in fear, feloniously rob, steal and take from the person of another, or in his presence, any money or other property which may be the subject of larceny, such robber not being

armed with a dangerous weapon, shall be guilty of
a felony, punishable by imprisonment in the state
prison not more than 15 years.

In support of his contention that larcenous in-
tent must exist at the time of the forceful act,
defendant relies upon *People v LeFlore,* 96 Mich
App 557, 561; 293 NW2d 628 (1980), lv den 409
Mich 927 (1980), and *People v Chamblis,* 395 Mich
408; 236 NW2d 473 (1975), the case upon which
the *LeFlore* Court relied.

In *Chamblis,* the defendant, his brother and
another man broke into the victim's apartment.
Once inside, one man struck the victim in the
head with a pistol, knocking him unconscious.
While the victim was unconscious, one of the men
took money from the victim's person. The jury
found defendant guilty of a lesser included charge
of larceny from a person. This Court reversed,
concluding that there was no evidence produced to
establish the crime of larceny from a person and
that the jury should have returned a verdict of
either guilty or not guilty on the armed robbery
charge. *People v Chamblis,* 60 Mich App 721; 231
NW2d 527 (1975). The Supreme Court reversed
this Court's decision and reinstated defendant's
conviction. The Supreme Court found that there
was evidence introduced at trial which could have
supported the jury's verdict:

> In light of the evidence adduced at trial, the
> jury could have believed defendant's story that he
> was reluctant to return to the house and intended
> to rob no one, and that the initial pistol crack
> across complainant's head by the brother was in
> retribution for the earlier cane beating defendant
> had suffered. They could have believed the com-
> plainant became unconscious and the men only
> then decided to take his money. If the money were

taken from the complainant under those circumstances, the offense would be larceny from the person. MCLA 750.357; MSA 28.589. [395 Mich 425.]

In *LeFlore,* the two defendants began kicking and hitting the victim after she came out of a store. During the assault, the victim's blouse was torn open and money fell from her brassiere. One of the two defendants picked the money up and the struggle continued until the two eventually made their escape. This Court held:

> In the instant case, there are insufficient factual findings as to the defendants' intent, so it is impossible to determine if adequate evidence was presented to support the unarmed robbery convictions. It is necessary then to remand to the trial court for more specific findings of fact on whether defendants intended to force complainant to part with her money by assaulting her prior to or at the time of taking, or whether, following the taking, force was purposefully inflicted to ensure complainant's loss of possession. In either case, unarmed robbery would be established. If however, the violence was perpetrated upon complainant with no larcenous intent and the intent to steal only occurred at the time of the taking, only larceny from the person and assault would be proven. *People v Jackson,* 390 Mich 621, 627; 212 NW2d 918 (1973). [96 Mich App 562-563.]

We read both *Chamblis* and *LeFlore* as requiring that larcenous intent exist at the time of the forceful act.[1]

---

[1] However, we question the wisdom of such a holding. In both cases, it is clear that the defendants specifically intended to permanently deprive the victims of property. In both cases, the defendants gained the opportunity to take possession as a result of force which they had applied. The plain language of the unarmed robbery statute does not appear to require more. However, *Chamblis* and *LeFlore* required

However, *Chamblis* and *LeFlore* are distinguishable on their facts. An unarmed robbery may be committed, either by "force and violence, or by assault or putting in fear." *People v Berry,* 112 Mich App 79; 315 NW2d 199 (1981). In both *Chamblis* and *LeFlore,* the robbery charges were based upon the force employed. In the instant case, it is apparent that the victim surrendered the money and her paycheck "out of fear." When a person is induced to part with property out of fear, the test to determine whether a robbery has been committed is whether "the party robbed has a reasonable belief that he may suffer injury unless he complies with the demand." *People v Kruper,* 340 Mich 114, 121; 64 NW2d 629 (1954). Thus the test is objective and from the victim's perspective. See, e.g., *People v Laker,* 7 Mich App 425, 428-429; 151 NW2d 881 (1967) (where this Court found that the circumstances of a man with hands in pocket, ordering a

that the larcenous intent exist both at the time of the taking *and* at the time of the forceful act. *Chamblis* cites no authority to support this conclusion. *LeFlore* relies on *Chamblis.*

When this Court has set forth the elements of unarmed robbery, no such continuous intent requirement has been included. *People v Spry,* 74 Mich App 584; 254 NW2d 782 (1977), lv den 401 Mich 825 (1977), *People v Tolliver,* 46 Mich 34; 207 NW2d 458 (1973), and *People v Denny,* 114 Mich App 320; 319 NW2d 574 (1982), lv den 417 Mich 860 (1983). Nor is such a requirement contained in the Michigan Criminal Jury Instructions. CJI 18:2:01. Finally, we note that such a rule is contrary to that followed by the majority of other states:

> Concerning the required concurrence of the defendant's conduct and state of mind, there is a question as to the robbery liability of one who strikes another, perhaps intentionally but with no intent to steal (or who intimidates another, though without an intent to steal), and who then, seeing his adversary helpless, takes the latter's property from his person or his presence. In other words, does robbery require that the defendant's violence-or-intimidation acts be done for the very purpose of taking the victim's property, or is it enough that he takes advantage of a situation which he created for some other purpose? The great weight of authority favors the latter view, holding that under the circumstances it is robbery . . . . [LaFave & Scott, Criminal Law, § 94, pp 701-702.]

waitress who was alone in a diner to empty the cash register and lie down on the floor, was sufficient proof of the inducement of fear).

There is no doubt in the instant case that the victim held a reasonable belief that she might suffer harm if she did not comply with defendant's request.

We believe that it is appropriate to distinguish *Chamblis* from situations where, as in the instant case, a victim surrenders property upon demand without protest or struggle after the person making the demand has subjected the victim to violence or threats of violence. It is evident from the request itself that the person making such a demand is relying upon the continuing effect of the fear he or she has created to effect compliance. Regardless of whether the defendant had planned to commit larceny when he committed the act of violence or uttered a threat of violence, the fact remains that the defendant purposely used the fear already present to accomplish the larceny. In our opinion, such is sufficient to constitute unarmed robbery. Accordingly, we decline to extend the rationale of *Chamblis* and *LeFlore* to the instant situation. We hold that, when unarmed robbery is accomplished through fear, it is not necessary that the defendant have had a larcenous intent at the time the defendant committed the act which initially induced the fear.

Because the jury was properly instructed on unarmed robbery "by putting in fear", the type of unarmed robbery which most closely fits the facts of the instant case, we find that the jury instructions did not create manifest injustice.

Defendant next argues that the trial judge who conducted the second trial abused his discretion by failing to review, when requested, a ruling by the first trial judge which permitted the prosecutor to

impeach defendant with evidence of a prior conviction.

This claim of error is not factually supported in the record. There is no indication that defendant did, in fact, request the second trial judge to suppress evidence of defendant's 1981 conviction of assault with intent to commit great bodily harm. The initial pages of the transcript of the second trial indicate that a discussion was held in chambers before the proceeding commenced. When the judge and the parties adjourned to the courtroom, *defense counsel* stated on the record:

> I should indicate that in chambers, before coming out here, the Court had asked if there were any preliminary matters or motions. I would indicate to the Court that this is a re-trial of a case that was a mis-trial. . . .
>
> That case was in front of Judge Roberts. It is my understanding that Judge Roberts made a ruling to the effect that the conviction of Assault With the Intent to Do Great Bodily Harm Less Than Murder can be used to my understanding.
>
> It is my belief that it is probably the law of the case and that Your Honor can no way in the world —you can get around the decision by Judge Roberts, and I would just indicate that it was my statement that was made in chambers.[2]

The prosecutor responded to defense counsel's argument by asserting that the second trial judge still had the authority to exercise his discretion

---

[2] Why a defense counsel would argue that a trial judge could not reconsider a ruling which permitted the impeachment of his client is somewhat unclear. However, we surmise that defense counsel feared that if the issue were reopened, the second trial judge might permit impeachment with evidence of two other prior felony convictions in addition to the conviction previously allowed. The two other convictions were CSC convictions. Since the offenses for which defendant was on trial also included a CSC charge, defense counsel could have reasonably believed that introduction of such evidence would have been extremely prejudicial.

and requested that he do so by continuing the ruling of the first trial judge and allowing the use of evidence of a prior assault conviction for impeachment purposes. Defense counsel responded and again asserted that the trial court could not modify the ruling of the prior judge:

> I don't think under *Pallie*, P-a-l-l-i-e, there is any discretion or latitude in this matter. To be frank, you are stuck with these rulings of a Judge of equal status as yourself.

The trial judge stated that he agreed with defense counsel and then concluded, "I don't know what other convictions there are exactly, but if that's all that was ordered at the first trial, we will stay with that."

Accordingly, we find that defense counsel did not request the second trial judge to reconsider the prior court's ruling permitting the introduction of evidence of defendant's assault conviction for impeachment purposes. To the contrary, the record indicates that defense counsel urged the court not to reconsider the prior ruling. It cannot be said that the trial court erred by failing to exercise his discretion when he was never requested to do so.

We also find that admission of evidence of the prior assault conviction does not rise to the level of manifest injustice. Evidence of the conviction was presumptively probative of credibility as it is the type of evidence which MRE 609 permits to be introduced for such purposes. The evidence of the prior assault conviction is not especially prejudicial, since it involved an offense dissimilar to the one for which defendant was on trial. Credibility was an important issue at this trial. Since defendant presented an alibi defense, he had a means of presenting his defense without taking the stand

himself. Thus, the first trial judge correctly determined that the factors set forth in *People v Crawford,* 83 Mich App 35; 268 NW2d 275 (1978), weighed in favor of admission.

Next, defendant argues improper rebuttal testimony was presented. One of the issues at trial concerns the operability of a 1972 Chevrolet owned by a member of defendant's family. This was the vehicle in which the assault allegedly occurred. Defendant's parents testified that the vehicle had been inoperable for at least a week before the date of the offense. As rebuttal, the prosecution presented Curia Thomas, a neighbor of defendant, who testified he had seen the vehicle being driven within the time frame defendant's parents had testified it was inoperable.

Operability of the vehicle was not a fact which the prosecutor was required to prove as an element of the charge against defendant. Rather, operability of the vehicle was raised as a defense. Thomas' testimony was responsive to that defense. Thus, it was a proper subject for rebuttal and not a subject which the prosecutor was obligated to present in his case in chief. *Kelly, supra,* p 281. Our opinion is not changed by the fact that defendant presented the same defense in the first trial. The prosecutor was not obligated to anticipate that defendant would use the same defense at the second trial and to refute it before it was presented.

Defendant's next argument is that the trial court erred by failing to set forth his reasons for departing from the sentencing guidelines on the csc charge. The guidelines recommended a minimum sentence of fifteen years to life. The trial court imposed a sixty-year minimum sentence. While it appears that sixty years falls within the range established by the guidelines, defendant

argues that it does not if the figures are converted to their earliest possible dates of parole. There is nothing in the guidelines which would permit such a reworking. Defendant's sentence does not exceed the guidelines. Thus, the factual basis of this claim fails.

Next, defendant argues that he must be resentenced because the trial court failed to mention the sentencing guidelines during the sentencing hearing and failed to inform defendant of the sentence range into which he had been placed. Defense counsel never requested that the trial court explain the basis of its SIR scoring. Nor has defendant alleged that the SIR was in fact inaccurately completed.

The sentencing guidelines are to serve merely as a tool for the trial judge in the exercise of his sentencing discretion. Their adoption by the Supreme Court does not give substantive rights to defendants. *People v Green,* 152 Mich App 16, 18; 391 NW2d 507 (1986). Accordingly, we hold that the trial court is not required to explain sua sponte how each variable was scored.

Finally, defendant argues that the presentence report failed to comply with the statutory requirements because it did not contain a "specific recommendation" for disposition as required by MCL 771.14; MSA 28.1144. Even though the presentence report did recommend "incarceration," defendant argues that since CSC I is "non-probational," MCL 771.1; MSA 28.1131, the recommendation of incarceration amounted to no recommendation at all.

To satisfy the statute, a simple recommendation of incarceration is sufficient. *People v Joseph,* 114 Mich App 70; 318 NW2d 609 (1982), lv den 417 Mich 877 (1983); *People v Arney,* 138 Mich 764; 360 NW2d 291 (1984). The statute does not indi-

cate that greater specificity is required for non-probational offenses than for probational offenses.

Defendant's conviction and sentence are affirmed.

SHEPHERD, J. *(concurring in part and dissenting in part).* I agree that the convictions should be affirmed.

I do not agree that the sentence is within the guidelines and I would remand for resentencing. If the guidelines sentence range suggests a sentence of 180 months to life, that would not be permitted. See *People v Boswell,* 95 Mich App 405, 410-411; 291 NW2d 57 (1980). The guidelines range must therefore mean that the minimum guideline sentence should be either fifteen years to a maximum term of years greater than fifteen years or, in the alternative, a straight life sentence. Under a life sentence, defendant would be eligible for parole in ten years. MCL 791.234(4); MSA 28.2304(4).

I would remand for resentencing at which the trial judge should state reasons for exceeding the guidelines. It is my view that any other interpretation of the guidelines would mean that any sentence is within the guidelines, i.e., there is no guideline range for this offense. The guidelines scheme presumes that a sentence falls within the statutory maximum but suggests sentence ranges based on the application of the guidelines factors to each case on an individual basis. Under the interpretation of the guidelines advanced by my colleagues, the guidelines factors would never be applied in this case no matter how long the sentence might be. I do not wish to imply that the sentence is not appropriate. I simply conclude that the sentence is not within the guidelines.