NOT DESIGNATED FOR PUBLICATION

No. 120,590

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MAURICE A. BROWN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOHN J. KISNER, JR., judge. Opinion filed April 17, 2020.
Affirmed in part, vacated in part, and remanded with directions.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MALONE and GARDNER, JJ.

PER CURIAM: Following a four-day jury trial, Maurice A. Brown was convicted of two counts of aggravated robbery and eight counts of kidnapping. On appeal, Brown contends that the district court erred by denying his *Batson* challenge to the striking of five minority jurors. In addition, he contends the district court erred by characterizing a prior juvenile adjudication in Michigan for armed robbery as a person felony at sentencing. Brown also attempts to raise two additional constitutional issues for the first time on appeal. For the reasons set forth in this opinion, we affirm Brown's convictions

1

and the order of restitution. However, we vacate Brown's prison sentence and remand this case to the district court for resentencing consistent with this opinion.

FACTS

On January 30, 2015, two armed men robbed a Red Sky Wireless phone store in Wichita. In so doing, the men bound the arms and legs of two store employees with zip ties and duct tape. The robbers escaped with cash and cell phones. Two months later, on March 29, 2015, two armed men robbed another Red Sky Wireless store in Wichita. Similar to the previous robbery, the men bound the arms and legs of six people in the store. Again, the robbers escaped with cash and cell phones.

The State charged Maurice A. Brown—an African-American male—with 5 counts of aggravated robbery and 14 counts of kidnapping. Subsequently, following a preliminary hearing, the complaint was amended to two counts of aggravated robbery and eight counts of kidnapping. After several delays, the district court commenced a four-day jury trial on October 23, 2018.

During voir dire, Brown raised a challenge pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). In doing so, Brown noted that the State had used five of its eight peremptory challenges to strike four African-American jurors and one multi-ethnic juror from the panel. In response, the State offered several race-neutral explanations for the strikes. In addition, the State noted that three Hispanic jurors remained on the panel and that the alternate juror was African-American. The district court accepted the State's explanations as supported by the statements and actions of the potential jurors and denied the *Batson* challenge.

After deliberation, the jury found Brown guilty of all the charges. Later, the State presented the district court with a presentencing report that showed Brown's criminal

2

history score to be a "D" and classifying a prior juvenile adjudication in Michigan for armed robbery as a person felony. Prior to sentencing, the district court overruled Brown's objection to this classification. The district court then imposed a presumptive 200-month prison sentence. In addition, the district court additionally ordered—without objection—that Brown pay restitution. Thereafter, Brown timely filed a notice of appeal.

ANALYSIS

On appeal, Brown raises four issues. First, whether the district court erred in denying his *Batson* challenge. Second, whether the district court erred by classifying his prior juvenile adjudication in Michigan for armed robbery as a person felony. Third, whether the district court violated section 5 of the Kansas Constitution Bill of Rights at sentencing. Fourth, whether the district court violated his constitutional rights by ordering restitution. In response, the State contends that the district court did not err and that Brown's convictions as well as his sentence should be affirmed.

Batson *Challenge*

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution applies to the State's privilege to strike prospective jurors through peremptory challenges. *State v. Kettler*, 299 Kan. 448, 461, 325 P.3d 1075 (2014). Under *Batson v. Kentucky*, we use a three-step analysis in considering whether the State exercised its peremptory strikes based on purposeful racial discrimination. *Batson*, 476 U.S. at 93-98; *Kettler*, 299 Kan. at 461-62. Ultimately, we must determine if the State exercised the peremptory strike, whether it did so for legitimate or discriminatory ends. *State v. Dupree*, 304 Kan. 43, 60, 371 P.3d 862 (2016).

The first step of the analysis requires the defendant to make a prima facie showing that the prosecutor's challenge was made on the basis of race; this step raises a question

of law, and appellate review of this issue is unlimited. *State v. Gonzalez-Sandoval*, 309 Kan. 113, 121, 413 P.3d 850 (2018); *Dupree*, 304 Kan. at 57. Here, the parties do not contest that Brown made a prima facie showing that the State exercised preemptory challenges based on race. The district court allotted each party eight preemptory strikes to use on a pool of 28 jurors. In addition, the parties selected an alternate juror. The prosecution used five of its eight peremptory challenges on four African-American jurors and one multi-ethnic juror. Thus, we agree with the district court that Brown met his initial burden of establishing a prima facie case. See *State v. Pham*, 281 Kan. 1227, 1237-38, 136 P.3d 919 (2006) (finding a prima facie case when a minority defendant demonstrated that the State struck multiple minority jurors).

Once a prima facie showing is made, the second step of the analysis shifts the burden to the State to articulate a legitimate—race-neutral—reason for using peremptory challenges to strike the minority jurors. The reason offered will be deemed race-neutral unless a discriminatory intent is inherent in the explanation. *Gonzalez-Sandoval*, 309 Kan. at 122; *Dupree*, 304 Kan. at 58. As the United States Supreme Court has held, what is meant "by a 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection." *Purkett v. Elem*, 514 U.S. 765, 769, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995). Indeed, the Kansas Supreme Court has held that the State "carries a relatively low burden to provide a race-neutral reason for a strike—the justification must be facially valid, but it need not necessarily be plausible or persuasive." *Dupree*, 304 Kan. at 59.

A review of the record reveals that the State articulated race-neutral reasons for striking the African-American and multi-ethnic jurors. In fact, Brown does not contend that the State failed to articulate race-neutral reasons for striking four of the five jurors. Instead, Brown argues that the State articulated a discriminatory reason for striking J.N.—who was the multi-ethnic member of the jury panel. Thus, we will focus our attention on those portions of the trial transcript that set out the statements made by J.N.

4

during voir dire as well as on the reasons given by the State in striking her from the jury panel.

On the second day of voir dire, Brown's attorney asked whether any prospective jurors had concerns about the possibility of finding an innocent person to be guilty of a crime. In response, J.N. stated:

"With the way we are in America right now, I have a great fear of that. You hear about people . . . being in prison and then it is was a case of mistaken identity. It was a coincidence, the wrong place at the wrong time, maybe not following up with all of the evidence or whatever it was. At this time it is so important to do follow up and look at all of the evidence. And we as our responsibility to look at everything. That's why I am in fear of putting an innocent person away for . . . no offense or whatever . . . people of color especially right now. And my mom is—I am of mixed race and so that is so important to me that we get everything right.

"Do it right because we want to follow the steps and do everything by the book as we should. And if that is what it takes, then that's how we should do it because putting an innocent person away is the worst thing that can happen to that person. Think of the time they spend in jail, the years they have. It is like it will make them seek revenge if they want to and it will be a vicious cycle. So, in doing the right thing and doing it like we should, look at all of the evidence and . . . there is nothing else involved other than the evidence, that's how we should do it."

After Brown asserted his *Batson* challenge, the State provided multiple reasons for striking J.N. In particular, the State noted J.N.'s concerns about "locking up" people and her "microscopic view" of the criminal justice system. In addition, the State noted that J.N. had failed to fully disclose her employment status on her juror information card; had smiled when Brown's attorney talked; and had expressed an interest in legal drama television shows. Further, the State noted that J.N. had self-identified as "mixed race" and suggested that she had indicated "biases" or a "preference" toward African-Americans.

Brown objects to the State's last reason, arguing that it is sufficient to show the prosecutor's discriminatory intent in striking J.N. from the jury panel. Specifically, Brown argues that the prosecutor *assumed* that Brown had a bias towards a specific minority group. However, in response, the State notes that J.N. brought up her own ethnic or racial identity when articulating her views on wrongful incarceration.

Equal protection principles preclude the State from striking jurors who share the racial identity of the defendant based on *assumptions* that those jurors will be biased towards their own race. *Flowers v. Mississippi*, 588 U.S. __, 139 S. Ct. 2228, 2241-42, 204 L. Ed. 2d 638 (2019); see also *Batson*, 476 U.S. at 97-98. In *Flowers*, the United States Supreme Court found:

> "In some of the most critical sentences in the *Batson* opinion, the Court emphasized that a prosecutor may not rebut a claim of discrimination 'by stating *merely* that he challenged jurors of the defendant's race *on the assumption—or his intuitive judgment*—that they would be partial to the defendant because of their shared race.' . . .'The core guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors *on the basis of such assumptions, which arise solely from the jurors' race*.'" (Emphases added.) *Flowers*, 130 S. Ct. at 2241 (quoting *Batson*, 476 U.S. at 97-98).

Although it appears that the State may have misinterpreted J.N.'s heartfelt statement regarding the wrongful incarceration of African-Americans, we do not find that the State relied on assumptions based purely on her ethnicity. Instead, the State offered an explanation grounded upon J.N.'s own statements. Although we do not necessarily find the State's explanation for striking J.N. to be persuasive, we find that the reasons given for exercising a peremptory challenge provide a facially valid and race-neutral reason to justify the strike.

6

Finally, the third step in the analysis is whether the objecting party carried his burden of proving purposeful discrimination. This decision often hinges on credibility determinations and weighing the evidence—matters that the district court is in a better position to decide than an appellate court looking at a cold record. Accordingly, we review the district court's decisions regarding whether Brown has shown purposeful discrimination on the part of the State under an abuse of discretion standard. *Gonzalez-Sandoval*, 309 Kan. at 126; *Dupree*, 304 Kan. at 58.

Judicial discretion is only abused when the district court's action was arbitrary, fanciful, or unreasonable. In other words, when no reasonable person would agree with the district court's decision or it made an error of law or fact. *State v. Schaal*, 305 Kan. 445, 449, 383 P.3d 1284 (2016); see *State v. Brown*, 51 Kan. App. 2d 876, 879-80, 357 P.3d 296 (2015). The party asserting an abuse of discretion—in this case Brown—bears the burden of establishing such abuse. *Schaal*, 305 Kan. at 449.

Brown points to the fact that five of the eight peremptory challenges exercised by the State were used to strike African-American and multi-ethnic jurors. Specifically, Brown suggests that "the sheer number of the prosecution's minority strikes, itself, served as evidence of its discriminatory intent." Although statistical evidence is one factor to consider, our Supreme Court has warned against placing determining emphasis on any one factor. Rather, when evaluating for purposeful discriminatory intent, district courts must look at the circumstances and subjectively evaluate the credibility of the prosecutor's reasons for each challenged strike. *State v. Trotter*, 280 Kan. 800, 812-13, 127 P.3d 972 (2006).

In this case, the record reveals that the State offered several race-neutral explanations for striking each of the African-American and multi-ethnic jurors. The district court found these explanations to be supported by the prospective jurors' statements and actions. As a result, the district court concluded that there was no

purposeful discrimination for any of the State's strikes. Giving deference to the district court's findings—which it was uniquely positioned to make—we find no abuse of discretion. Rather, we conclude that the district court's determination that there had not been purposeful discrimination was reasonable and was not based on either a mistake of law or fact.

*Classification of Prior Juvenile Adjudication*

Next, Brown contends that his sentence was illegal because the district court classified his prior juvenile adjudication in Michigan for armed robbery as a person felony. Brown argues that, because the elements of Michigan armed robbery are broader than the Kansas robbery or aggravated robbery statutes, the Michigan adjudication must be scored as a nonperson felony for sentencing purposes. As a result, he suggests that his criminal history score should be "G" instead of "D" as used by the district court at sentencing.

Whether the district court properly classified Brown's prior convictions as person or nonperson crimes for criminal history purposes involves interpretation of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2019 Supp. 21-6801, et seq. Because statutory interpretation presents a question of law, our review is unlimited. *State v. Wetrich*, 307 Kan. 552, 555, 412 P.3d 984 (2018). To classify an out-of-state conviction or juvenile adjudication for criminal history purposes, Kansas courts have been instructed to follow two steps. First, we must categorize the prior conviction or juvenile adjudication as a misdemeanor or a felony by deferring to the convicting jurisdiction's classification of the crime. Second, we must determine whether the prior conviction or juvenile adjudication is a person or nonperson offense. K.S.A. 2019 Supp. 21-6811(e); see *Wetrich*, 307 Kan. at 556.

8

Here, Brown only challenges the second step of the classification process so we will move to that step in our analysis. To determine whether a prior conviction or juvenile adjudication is a person or nonperson offense, we must look to a comparable offense or offenses in Kansas in effect at the time the defendant committed the current crime of conviction. K.S.A. 2019 Supp. 21-6811(e)(3). If Kansas has no comparable offenses, the out-of-state conviction or juvenile adjudication must be classified as a nonperson crime—even when such crime is inherently a person crime. *Wetrich*, 307 Kan. at 561-62.

In *Wetrich*, 307 Kan. at 561-62, the Kansas Supreme Court explained:

"[I]nterpreting 'comparable offenses' in K.S.A. 2017 Supp. 21-6811(e)(3) to mean that the out-of-state crime cannot have broader elements than the Kansas reference offense—that is, using the identical-or-narrower rule—furthers the KSGA's goal of an even-handed, predictable, and consistent application of the law across jurisdictional lines. Cf. *Johnson*, 135 S. Ct. at 2562-63 (discussing goal of doctrine of stare decisis to effect even-handed, predictable, and consistent application of the law). Accordingly, we hereby adopt that interpretation. For an out-of-state conviction to be comparable to an offense under the Kansas criminal code, the elements of the out-of-state crime cannot be broader than the elements of the Kansas crime. In other words, the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced."

In making the comparison between an out-of-state offense and a comparable Kansas crime, we are to consider not only the plain language of the statute, but we are also to consider relevant statutory definitions and the interpretation of the statutory elements. See *State v. Gensler*, 308 Kan. 674, 680-81, 423 P.3d 488 (2018). If Kansas does not have a comparable offense in effect on the date the current crime of conviction was committed, the out-of-state crime must be classified as a nonperson crime. Likewise, if the elements of the out-of-state crime are broader than the comparable Kansas offense, it must be classified as a nonperson crime regardless of the plain statutory language. *Wetrich*, 307 Kan. 552, Syl. ¶¶ 2-3.

9

Because there is no dispute that Brown's prior offense in Michigan was a felony, we turn to the question of whether it should be classified as a person or nonperson felony for the purposes of determining his criminal history score. Here, Brown contends that his prior Michigan juvenile adjudication for armed robbery is not comparable to a Kansas offense because Michigan's armed robbery statute is broader than Kansas' robbery and aggravated robbery statutes. The parties agree that Mich. Comp. Laws § 750.529, § 750.530, and § 750.357 define the crime committed by Brown in Michigan. These statutes provide:

"Sec. 529. A person who engages in conduct proscribed under section 530 and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years. If an aggravated assault or serious injury is inflicted by any person while violating this section, the person shall be sentenced to a minimum term of imprisonment of not less than 2 years." Mich. Comp. Laws § 750.529.

"Sec. 530. (1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.

"(2) As used in this section, 'in the course of committing a larceny' includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." Mich. Comp. Laws § 750.530.

"Sec. 357. LARCENY FROM THE PERSON—Any person who shall commit the offense of larceny by stealing from the person of another shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years." Mich. Comp. Laws § 750.357.

10

In contrast, at the time Brown committed his current crimes of conviction, the Kansas robbery statutes stated:

> "(a) Robbery is knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person.
>
> "(b) Aggravated robbery is robbery, as defined in subsection (a), when committed by a person who:
>
> (1) Is armed with a dangerous weapon; or
>
> (2) inflicts bodily harm upon any person in the course of such robbery.
>
> "(c) (1) Robbery is a severity level 5, person felony.
>
> (2) Aggravated robbery is a severity level 3, person felony." K.S.A. 2014 Supp. 21-5420.

First, Brown contends that the Michigan statutes are broader because placing another in fear is sufficient to commit the crime of robbery. See *People v. Hearn*, 159 Mich. App. 275, 281, 406 N.W.2d 211 (1987). Although Brown contends that the same is not true of the Kansas robbery statutes, our Supreme Court has found that robbery can be committed merely by placing another person in fear. See *State v. Moore*, 269 Kan. 27, 33, 4 P.3d 1141 (2000) (finding that the charge of aggravated robbery was properly submitted to the jury when the "defendant orchestrated a situation intended to intimidate the young woman into surrendering her car keys"). Hence, we do not find the Michigan statutes to be broader than the Kansas statutes for this reason.

Second, Brown contends that the Michigan robbery statutes are broader than the Kansas robbery statutes because a person can be convicted of robbery based on using force to accomplish an escape. See *People v. Letham*, No. 269789, 2007 WL 1687468, at *1 (Mich. App. 2007) (unpublished opinion) (Mich. Comp. Laws § 750.530[2] defines the crime of robbery to include "'in flight or attempted flight after the commission of the larceny.'"). In contrast, the Kansas robbery statutes do not permit a conviction based on acts which occur after the taking of property. See *State v. Plummer*, 295 Kan. 156, Syl.

11

¶ 3, 165, 283 P.3d 202 (2012) (When violence is used to retain property to effectuate an escape, such an act is a theft rather than robbery.).

As the State candidly recognizes, a panel of this court has previously decided a similar issue in *State v. Heard*, No. 118,569, 2018 WL 6580497 (Kan. App. 2018) (unpublished opinion), *rev. denied* September 11, 2019. In *Heard*, the panel found that the Arkansas robbery statute was broader than the Kansas robbery statute because the Arkansas statute allows a person to be convicted of robbery based on acts occurring after the taking of property to support a robbery conviction. 2018 WL 6580497, at *3. Because the panel concluded that because the Arkansas robbery statute was broader than the Kansas robbery statute, it found that they were not comparable for the purposes of determining the defendant's criminal history score. 2018 WL 6580497, at *4, 6. Although we recognize that *Heard* is not binding authority, we do find it to be persuasive regarding the current status of Kansas law.

We agree with the State that there are incidences where it is appropriate to compare an out-of-state criminal conviction or juvenile adjudication to more than one Kansas offense. See *State v. Williams*, No. 114,778, 2019 WL 406296 (Kan. App. 2019) (unpublished opinion). Moreover, it seems logical to conclude that certain offenses—like homicide, rape, and robbery—are inherently person crimes. However, we must follow the precedent of our Supreme Court unless there is some indication that the court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). Although we are hopeful that our Supreme Court might recognize that some offenses are inherently person crimes, we do not have any indication that it is departing from *Wetrich* at this point in time. Thus, because this is a direct appeal, we must follow *Wetrich*.

Applying *Wetrich* to this case, we find that the Michigan robbery statutes are broader than the Kansas robbery statutes. As a result, we conclude that the district court was compelled under *Wetrich* to classify Brown's prior juvenile adjudication for armed

12

robbery in Michigan as a nonperson crime. 307 Kan. at 561-62. Accordingly, we vacate Brown's sentence and remand this matter for resentencing after recalculating his criminal score in a manner consistent with this opinion.

*Judicial Findings of Prior Criminal History*

Next, Brown contends that the district court's determination of his criminal history score and the resulting sentence violated his constitutional right to a jury trial under section 5 of the Kansas Constitution Bill of Rights. It is undisputed that Brown did not present this issue to the district court. Instead, he presents it for the first time on appeal. So, we must first determine whether this issue is properly before us.

Whether an issue has been properly preserved for appeal is a question of law that this court reviews de novo. *State v. Haberlein*, 296 Kan. 195, 203, 290 P.3d 640 (2012). As a general rule, unless an issue is first presented to the district court, it is not preserved for appeal. *State v. Cheffen*, 297 Kan. 689, 696, 303 P.3d 1261 (2013). There are three exceptions to the general rule that a party cannot raise a constitutional claim for the first time on appeal. An appellate court may consider the new claim if:  (1) it involves a pure legal question arising on proved or admitted facts that's finally determinative of the case, (2) considering it is necessary to serve the ends of justice or prevent the denial of fundamental rights, or (3) the district court was right for the wrong reason. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015).

The right to a jury trial is a fundamental right under section 5 of the Kansas Constitution Bill of Rights. *State v. Rizo*, 304 Kan. 974, 979-80, 377 P.3d 419 (2016). This constitutional right is codified in K.S.A. 22-3403(1), which requires that all felony cases be tried to a jury unless the defendant and prosecuting attorney—with the consent of the district court—submit the matter to a bench trial. Here, although Brown did not raise this issue before the district court, we may consider it nonetheless because it

13

implicates a claim to the fundamental right to a trial by a jury. See *State v. Beaman*, 295 Kan. 853, 856-58, 286 P.3d 876 (2012). Therefore, we find that a decision on the merits would serve the ends of justice.

Turning to the merits, Brown suggests that "prior to Kansas' statehood, American common law required any fact which increased the permissive penalty for a crime—inclusive of an offender's prior criminal convictions—to be proven to a jury beyond a reasonable doubt." As such, he argues that "the sentencing scheme set out by the KSGA—in which judicial findings of criminal history elevate a defendant's presumptive prison sentence—is unconstitutional." Nevertheless, as the parties recognize, an identical argument was raised and rejected by a panel of this court in *State v. Valentine*, No. 119,164, 2019 WL 2306626, at *6 (Kan. App. 2019) (unpublished opinion), *rev. denied* December 17, 2019.

We do not agree with Brown that *Valentine* was wrongly decided. Moreover, we note that our Supreme Court had the opportunity to review the issue in *Valentine* but chose to deny the petition for review filed in that case. Further, a similar argument has been rejected by the United States Supreme Court with respect to the United States Constitution in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Likewise, the Kansas Supreme Court has rejected the argument that the KSGA violates the Sixth and Fourteenth Amendments to the United States Constitution. See *State v. Ivory*, 273 Kan 44, 45-48, 41 P.3d 781 (2002).

Similar to *Valentine*, Brown has failed to provide authority establishing that section 5 of the Kansas Constitution Bill of Rights requires jury findings regarding prior criminal convictions that the Sixth Amendment does not provide. Instead, "[t]his court is duty bound to follow Kansas Supreme Court precedent absent some indication that the court is departing from its previous position." *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). Thus, we find Brown's argument that section 5 of the Kansas

14

Constitution Bill of Rights should be interpreted to provide a greater right than set forth in the Sixth Amendment to the United States Constitution to be unpersuasive.

*Judicial Order of Restitution*

Finally, Brown contends that the district court violated his constitutional right to a jury trial by imposing restitution under K.S.A. 2019 Supp. 21-6604(b)(1). Specifically, Brown argues that the statute allowing judicially determined restitution in criminal cases violates a criminal defendant's common-law right to a jury trial under section 5 of the Kansas Constitution. In the alternative, he argues that the determination of the amount ordered by a judge violates the Sixth Amendment to the United States Constitution.

Again, Brown failed to raise this issue with the district court. As such, we could refuse to consider this issue for lack of preservation. See *Godfrey*, 301 Kan. at 1043. Nevertheless, as we did with the previous issue, we find that a decision on the merits would serve the ends of justice because Brown is asserting a violation of his fundamental right to a jury. See *Beaman*, 295 Kan. at 856-58. Therefore, we find that a decision on the merits would serve the ends of justice.

Like any constitutional claim, the question of whether K.S.A. 2019 Supp. 21-6604(b)(1) violates "[t]he right of trial by jury" as provided in section 5 of the Kansas Constitution Bill of Rights is a legal question subject to unlimited review. See *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1132-33, 442 P.3d 509 (2019). It is undisputed that section 5 preserves the common-law right to a jury trial as it existed in 1859 when the Kansas Constitution was ratified. So, section 5 applies only if a jury would have decided the issue in Kansas in 1859.

For some issues, it is clear that section 5 applies. For example, it applies to fact questions involving "liability and actual damages in civil cases and guilt in criminal

15

cases," because a jury in Kansas would have decided those issues in 1859. *State v. Love*, 305 Kan. 716, 735-36, 387 P.3d 820 (2017). But it is less clear that section 5 applies to restitution. Brown offers two alternative reasons why he believes restitution implicates the right to a jury trial under section 5 of the Kansas Constitution Bill of Rights. However, we find neither of these reasons to be persuasive.

As our Supreme Court has held, "[r]estitution ordered in criminal proceedings and civil damages are separate and independent remedies under Kansas Law." *State v. Applegate*, 266 Kan. 1072, 1078, 976 P.2d 936 (1999). Consequently, because restitution is not a civil remedy, Brown's analogies to juries historically deciding damages in civil tort cases are misplaced. Thus, we conclude that the determination of the amount of restitution in a criminal case is not subject to the right to a jury trial under section 5 of the Kansas Constitution Bill of Rights.

In addition, we find Brown's alternative argument that the Sixth Amendment to the United States Constitution requires that a jury determine the amount of restitution in a criminal case to be similarly unconvincing. In support of his argument, Brown cites *Apprendi*, which holds that "any fact (other than a prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." 530 U.S. at 476. In addition, he cites *Alleyne v. United States*, 570 U.S. 99, 103, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), which holds that facts that increase a mandatory minimum penalty must be submitted to the jury.

A similar argument was made by the defendant in the case of *State v. Huff*, 50 Kan. App. 2d 1094, 336 P.3d 897 (2014), *rev. denied* 302 Kan. 1015 (2015). In *Huff*, a panel of our court held:

16

"Restitution, although part of a defendant's sentence, is not punishment; even if restitution were considered punishment, it does not exceed the statutory maximum of a defendant's sentence." 50 Kan. App. 2d at 1099 (collecting additional cases).

Similarly, in *State v. Arnett*, another panel of our court reached the same conclusion, holding:

"[R]estitution is not considered a punishment in the same way incarceration or a find paid to the State would be. Rather, it is a rehabilitative and compensatory tool designed to aid both convicted criminals and their victims. . . . Even if restitution were considered punitive and, thus, punishment . . . [t]he Kansas statutes governing restitution impose neither mandatory minimum amounts nor maximum amounts. . . . So even if restitution were punitive, the scheme does not entail mandatory minimums or maximums triggering the protections set out in . . . *Apprendi*." No. 112,572, 2018 WL 2072804, at *2 (Kan. App. 2018) (unpublished opinion), *rev. granted* 308 Kan. 1596 (2018).

We agree with our court's prior rulings regarding this issue. While it is undisputed that restitution is part of a defendant's sentence, this does not mean that restitution is punishment. See *State v. McDaniel*, 292 Kan. 443, 446, 254 P.3d 534 (2011); *State v. Hall*, 45 Kan. App. 2d 290, 298, 247 P.3d 1050 (2011), *aff'd* 297 Kan. 709, 304 P.3d 677 (2013). Instead, by definition, restitution is a form of restorative justice intended to return the victim of a crime—to the extent possible to do so—back in the position that he or she was in prior to the commission of the criminal act. See Black's Law Dictionary 1571 (11th ed. 2019) (defining restitution, in part, as: "Return or restoration of some specific thing to its rightful owner or status. 4. Compensation for loss, esp., full or partial compensation paid by a criminal to a victim, not awarded in a civil trial for tort, but ordered as part of a criminal sentence or as a condition of probation."). Unlike a criminal fine, restitution benefits—and flows to—the victim of the crime who suffered the injury and not to the government. See *Applegate*, 266 Kan. at 1076 (noting that, while restitution may serve a rehabilitative or deterrence function, it is distinguishable from

17

criminal fines—which are punitive in nature.) (citing *State v. Iniguez*, 169 Ariz. 533, 537, 821 P.2d 194 [1991]).

Although district courts have some discretion in imposing restitution, it may only be awarded up to "the amount that reimburses the victim for the actual loss suffered." 266 Kan. at 1079. Moreover, a district court has the discretion to award less than the actual amount of loss if the plan of restitution is found to be unworkable. Specifically, K.S.A. 2019 Supp. 21-6604(b)(1) provides that a district court "shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances that would render a plan of restitution unworkable."

Even if we were to agree that restitution constitutes punishment or a criminal penalty, we find that the imposition of restitution does not increase a defendant's maximum or minimum sentence. As indicated above, a district court's discretion in awarding restitution to a victim is limited to the actual amount of loss or a lower amount if the plan of restitution is unworkable. Thus, we do not find that the Kansas restitution statutes violate a defendant's Sixth Amendment right to a jury trial and we conclude that the district court did not err in imposing restitution in this case.

We, therefore, affirm Brown's convictions as well as the restitution order entered by the district court, and we vacate Brown's prison sentence and remand this case for resentencing consistent with this opinion.

Affirmed in part, vacated in part, and remanded with directions.