PEOPLE v CRAWFORD

Docket No. 68694. Submitted January 23, 1985, at Lansing.—Decided November 19, 1985.

Norman G. Crawford was convicted of second-degree murder, Saginaw Circuit Court, Hazen R. Armstrong, J. Defendant's presence for trial had been obtained pursuant to the Interstate Agreement on Detainers but he was not brought to trial within the required 120 days because, the day before his scheduled trial, the court disqualified defendant's counsel upon the motion of the prosecutor and rescheduled the trial for a date beyond the 120-day time limit. Defendant was not present when his retained counsel was disqualified and the trial rescheduled. Defendant appealed. *Held:*

1. The 120-day period within which a defendant whose presence is obtained pursuant to the Interstate Agreement on Detainers must be brought to trial may be tolled only for a period which is (a) the result of any necessary and reasonable continuance for good cause shown in open court with the defendant or his counsel present, (b) due to defendant's inability to stand trial, or (c) caused by the defendant's request or to accomodate the defendant.

2. The reasons presented by the prosecution for requesting defense counsel's disqualification, which amounted to a perceived conflict of interest, were not sufficient on the facts of this case to justify the disqualification. The procedures followed were irregular and seriously invaded defendant's right to counsel.

3. On the facts of this case, there was no justification for the

REFERENCES

Am Jur 2d, Criminal Law §§ 404-407, 849 *et seq.,* 967 *et seq.*

Continuances at instance of state public defender or appointed counsel over defendant's objections as excuse for denial of speedy trial. 16 ALR4th 1283.

Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client. 2 ALR4th 27.

Validity, construction, and application of Interstate Agreement on Detainers. 98 ALR3d 160.

failure to bring the defendant to trial within 120 days. The trial court, therefore, lost jurisdiction to try the case.

Reversed.

1. Criminal Law — Interstate Agreement on Detainers — Delay of Trial.

A prisoner who is brought from another state pursuant to the Interstate Agreement on Detainers for purpose of trial is to be brought to trial within 120 days of his arrival in the receiving state or the charges should be dismissed; however, any necessary and reasonable continuance granted in open court with the prisoner or his counsel present is not included in the 120 days, the trial court may toll the time period for any time the prisoner is unable to stand trial, and any delay caused by the prisoner's request or to accommodate the prisoner is not included in the 120-day period (MCL 780.601; MSA 4.147[1]).

2. Constitutional Law — Assistance of Counsel — Choice of Counsel.

The constitutional right to assistance of counsel includes the right to a reasonable opportunity for a defendant to retain counsel of his or her own choosing (US Const, Am VI; Const 1963, art 1, § 20).

3. Criminal Law — Assistance of Counsel — Conflict of Interest.

A defendant must be given an opportunity, when his retained counsel is perceived to have a conflict of interest, to waive his right to conflict-free representation; a voluntary waiver of that right, knowingly and intelligently made, must be honored by the court in the absence of compelling circumstances.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Christopher S. Boyd,* Prosecuting Attorney, and *Kay F. Pearson,* Assistant Prosecuting Attorney, for the people.

*Thomas J. Bleau,* for defendant on appeal.

Before: Shepherd, P.J., and D. E. Holbrook, Jr. and M. F. Sapala,* JJ.

Per Curiam. After a jury trial, defendant was

* Recorder's court judge, sitting on the Court of Appeals by assignment.

convicted of second-degree murder, MCL 750.317; MSA 28.549. Defendant was sentenced to imprisonment for from 15 to 25 years and he appeals as of right.

The prosecution obtained defendant for trial pursuant to the Interstate Agreement on Detainers, MCL 780.601; MSA 4.147(1). Article IV(c) of the agreement provides:

"In respect of any proceeding made possible by this Article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

In *People v Meyers (On Remand),* 124 Mich App 148, 154; 335 NW2d 189 (1983), the Court explained:

"[T]he purpose of the Interstate Agreement on Detainers, MCL 780.601; MSA 4.147(1), is to facilitate the disposition of charges in one jurisdiction when an accused is incarcerated in another jurisdiction. Thus, Art IV(c) of the act requires the trial court to dismiss any charges brought against a defendant under the act if the defendant has not been brought to trial within the specified 120-day period. However, the 120-day time period may be tolled: (1) for any period which is the result of any necessary and reasonable continuance for good cause shown in open court with the defendant or his counsel present, (2) for any period during which the defendant is unable to stand trial, and (3) for any period of delay caused by the defendant's request or in order to accomodate the defendant."

Defendant was not brought to trial within the 120-day period. It is apparent from the record that defendant would have been brought to trial within

the period but for the trial court's disqualification of defendant's retained counsel on the day before a scheduled trial date within the 120 days. The delay cannot be characterized as "the result of any necessary and reasonable continuance for good cause shown in open court with the defendant or his counsel present". Defendant was not personally present when the trial court ordered the continance and was not then represented by counsel, because his former counsel had just been disqualified. Defendant was able to stand trial on the scheduled day and did not request a delay. The only arguable justification for the delay was that it was "in order to accomodate the defendant" by allowing time for a new defense counsel to prepare.

The right to assistance of counsel guaranteed by US Const, Am VI and Const 1963, art 1, § 20 includes the right to a reasonable opportunity for defendant to retain counsel of his or her own choosing. See *People v Humbert,* 120 Mich App 195, 197; 327 NW2d 435 (1982), citing *Powell v Alabama,* 287 US 45; 53 S Ct 55; 77 L Ed 158 (1932). The prosecutor here offered three reasons in an attempt to justify the extraordinary step of removing defendant's retained counsel without defendant's consent:

(1) In 1974 and 1975, when charges in this case were first brought, the defense counsel's father represented various alleged accomplices of defendant. The prosecutor claimed that the defense counsel's father improperly induced his clients to breach a plea agreement under which, according to the prosecutor, the accomplices were supposed to testify against defendant. The prosecutor claimed that the conduct of the defense counsel's father would inevitably be at issue at trial.

(2) The defense counsel interviewed a possible

prosecution witness, Kenneth Provost. Provost allegedly told the defense counsel that his previous statements and testimony implicating defendant were false and that he would give testimony favorable to the defense at trial. Provost was called to testify about this alleged retraction at a pretrial evidentiary hearing and invoked the privilege against self-incrimination. The prosecutor claimed that, under these circumstances, the defense counsel would inevitably be a witness at trial.

(3) The defense counsel had represented John Ovalle, whom the prosecution proposed to call at trial, in grand jury proceedings in this case. The prosecution claimed that such representation presented a conflict of interest.

The prosecution's motion to disqualify was made orally on the day before the scheduled trial date. No written motion was ever filed. No advance notice of the motion was ever given to the defense, although the proseutor claimed to have discussed the possibility of disqualification with the defense counsel. Defendant was not given an opportunity to be personally present at the hearing on the motion.

The prosecutor proffers two explanations for making the motion to disqualify on the last day before the scheduled trial date. The prosecutor first claims that he anticipated a plea agreement in this case and did not learn that defendant would not plead guilty until four or five days before the scheduled trial date. This explanation is frivolous. If the alleged conflicts of interest would have prevented the defense counsel from adequately representing defendant at trial, we cannot see how the defense counsel could be entrusted with carrying out plea negotiations. This explanation also does not satisfactorily explain why the motion to disqualify was made orally without any

advance notice to the defendant three or four days after the time when, according to the prosecutor, plea negotiations were broken off. Finally, no authority suggests that pending plea negotiations relieve the prosecutor of the duty to bring the case promptly to trial. Nothing in the record suggests that the defense ever sought a delay for plea negotiations. Acceptance of the prosecutor's explanation would permit the prosecutor to delay trial indefinitely merely by offering to permit defendant to plead guilty.

The prosecutor also claims that he discovered the reasons for disqualification only shortly before the motion. It is clear, however, that he had literally known for years of at least two of the proffered reasons, the involvement of the defense counsel's father and the defense counsel's representation of John Ovalle. The prosecution's motion to disqualify came at a hearing on a defense motion relating to the defense counsel's interview with Kenneth Provost. Provost's statements to the defense counsel were revealed in the defense motion, and the record shows that the prosecution received timely notice of that motion. We therefore cannot see how the prosecution's recent discovery of the interview between the defense counsel and Provost could provide a justification for the prosecution's extraordinarily irregular motion practice here.

In *People v Fox,* 97 Mich App 324, 328; 293 NW2d 814 (1980), *rev'd on other grounds,* 410 Mich 871 (1980), this Court explained that gross incompetence, physical incapacity, or contumacious conduct may justify removal of an attorney. In *People v Reese,* 699 F2d 803, 805 (CA 6, 1983), the Court held:

"When presented [with a government pretrial motion

to disqualify a defense counsel] the district court must make a careful inquiry, balancing the constitutional right of the defendant to representation by counsel of his choosing with the court's interest in the integrity of its proceedings and the public's interest in the proper administration of justice. This inquiry will ordinarily require a hearing at which both parties will be permitted to produce witnesses for examination and cross-examination.

"Furthermore, even if an actual conflict of interests or a strong likelihood of conflict is demonstrated the defendant must be given an opportunity to waive his constitutional right to conflict-free representation. A voluntary waiver of this constitutional right, knowingly and intelligently made, must be honored by the court in the absence of compelling circumstances."

Compelling circumstances in which a defendant's waiver of the right to conflict-free representation should not be honored are presented when the defense counsel previously represented a prosecution witness and could not effectively cross-examine his former client without intruding into matters protected by the attorney-client privilege. See, for example, *United States v Provenzano*, 620 F2d 985, 1005 (CA 3, 1980).

The "careful inquiry" required in *Reese* was not conducted here. No evidentiary hearing was conducted, the prosecution's irregular motion practice prevented the defense from calling any witnesses, and defendant was not present or consulted. Moreover, disqualification cannot be justified on this record. The most serious reason advanced for disqualification was the defense counsel's prior representation of John Ovalle. Nothing in the record suggests that the defense counsel could not effectively cross-examine Ovalle without intruding into matters protected by the attorney-client privilege. At trial, Ovalle's testimony was impeached by

evidence of his numerous prior felony convictions. Evidence of Ovalle's prior felony convictions was not protected by the attorney-client privilege. Under these circumstances, the circuit court would have had to honor a waiver by defendant and allow continued representation by defendant's retained counsel.

Proper preparation for trial required the defense counsel to interview Provost, then apparently an important prosecution witness. The possibility of that interview leading to the defense counsel's becoming a witness was remote. The defense evidently had no intention of calling Provost, no doubt because of Provost's prior statements implicating defendant. Because the prosecution knew of Provost's recantation and because Provost was not a res gestae witness whom the prosecutor was obliged to call, the prosecution could not call any witness, let alone the defense counsel, to impeach Provost if Provost gave testimony favorable to defendant. See *People v White,* 401 Mich 482, 508-509; 257 NW2d 912 (1977). The prosecution was unlikely to call Provost under these circumstances, and Provost in fact did not testify at trial. Because disqualification of defense counsel under these circumstances could have a significant chilling effect on pretrial investigation, consideration of disqualification should have been postponed at least until it became apparent whether Provost would be likely to give testimony favorable to the prosecution.

The prosecution does not explain, and we cannot understand, how any advice the defense counsel's father gave to defendant's alleged accomplices in 1974 or 1975 about whether to testify against defendant could conceivably be relevant to anything at issue at trial. The assumption by the court and the prosecutor that the defense counsel's

father's conduct would inevitably be at issue at trial is insupportable.

The last-minute motion, grossly irregular procedures, and serious invasion of defendant's right to counsel which this record shows cannot justify the failure to bring defendant to trial within the 120-day period.

We feel compelled to point out that the error that occurred in this case could have been prevented. It appears from the record that defendant was returned to Michigan jurisdiction on March 7, 1982. Thus, the last day for commencing trial under the 120-day rule was July 5, 1982. The attorney was disqualified on June 8, 1982, almost four weeks prior to the last available trial date, yet trial was not set to commence until July 13, 1982. The prosecutor could have insisted and the court could have set a trial date for a day before July 5. Substitute counsel was appointed June 14, 1982, and would have had three weeks for preparation or, if more preparation time were needed, new defense counsel could have filed a motion for adjournment and that delay would have been attributable to the defendant.

Instead, for an unexplained reason, the trial court set the trial date for July 13 and the prosector acquiesced knowing (or neglecting to find out) that the 120-day period would already have expired on that date. Either the prosecutor was not paying attention or the prosecutor's office decided to gamble. In either event, the jurisdictional time period was unnecessarily allowed to lapse, thereby giving rise to the issues considered in this appeal.

Since violation of the Interstate Agreement on Detainers, MCL 780.601; MSA 4.147(1), results in the catastrophic consequence of the trial court's losing jurisdiction, prosecutors and trial courts

have an obligation to pay special attention to the statutory requirements. An oral motion to disqualify counsel so close to the expiration of the 120-day period, when the prosecutor had knowledge of facts in support of such a motion much earlier, does not lead us to believe that the prosecutor was paying close attention to the statutory (and jurisdictional) deadline. In the future, trial courts and prosecutors would be well-advised when it appears that a trial date is being set beyond the statutory period to clearly state on the record the reasons necessitating such a decision or to take steps which will not gratuitously deliver a jurisdictional issue into the hands of a defendant.

Reversed.