PEOPLE v COONES

Docket No. 166114. Submitted November 9, 1995, at Grand Rapids. Decided May 21, 1996, at 9:10 A.M.

John L. Coones was convicted by a jury in the Bay Circuit Court, Eugene C. Penzien, J., of aggravated stalking, malicious destruction of a building, entering a dwelling without permission, and entering the premises of another after being forbidden to do so by the occupant. The victim was the defendant's wife, who had obtained from the same judge a temporary restraining order against the defendant banning him from contacting the victim. In contacting the victim, the defendant had been found in criminal contempt for violating the restraining order. Contact had also been in violation of the terms of the defendant's personal recognizance bond. Before trial, the defendant's appointed counsel moved for disqualification of the judge on the basis that he had issued the restraining order and had found the defendant guilty of criminal contempt. The judge denied the motion. After the defendant's conviction but before sentencing, the defendant's counsel supplemented the motion to disqualify the judge. The judge removed the defendant's counsel and appointed new counsel. The chief judge denied the motion for disqualification, and the trial judge sentenced the defendant to concurrent prison terms of forty to sixty months for aggravated stalking, thirty-two to forty-eight months for malicious destruction of a building, ninety days for entering a dwelling without permission, and thirty days for entering the premises of another after being forbidden to do so by the occupant. The defendant appealed.

The Court of Appeals held:

1. The trial court correctly refused the defendant's request that the jury be instructed that conduct that serves a legitimate purpose does not constitute harassment under the stalking statute, MCL 750.411i; MSA 28.643(9). Such an instruction would not have been proper in light of the defendant's illegitimate conduct of contacting the defendant in violation of the restraining order and the terms of his bond.

2. The motions for disqualification of the trial judge were properly denied. Prejudice against the defendant or defense counsel was not shown and the trial judge did not act as the initial

factfinder or decisionmaker in the pretrial proceedings in the criminal case.

3. Convictions of both aggravated stalking and criminal contempt do not constitute double jeopardy. Cumulative punishment for the same conduct does not violate the Double Jeopardy Clauses of the federal and state constitutions where the Legislature intended cumulative punishment. The aggravated-stalking statute, MCL 740.411i(6); MSA 28.643(9)(6), provides that a criminal penalty under the statute and a penalty for contempt of court may be imposed for the same conduct.

4. As decided in *People v White*, 212 Mich App 298 (1995), the aggravated-stalking statute is not unconstitutionally vague.

5. The trial court abused its discretion in removing sua sponte the defendant's original appointed counsel and appointing replacement counsel in the absence of gross incompetence, physical incapacity, or contumacious conduct by the original counsel. A harmless-error analysis does not apply with respect to this action by the court, and the defendant is not required to show prejudice.

Convictions affirmed; case remanded for resentencing.

O'CONNELL, P.J., concurring, stated that, in light of a showing of actual prejudice to the defendant, it was not necessary to decide that the harmless-error doctrine does not apply with respect to the trial court's removal of the original appointed counsel.

J.M. BATZER, J., concurring, stated that the defendant's motions for disqualification of the trial judge were legally frivolous and agreed with Judge O'CONNELL that it was not necessary to decide the applicability of a harmless-error analysis to the trial court's removal of the original appointed counsel.

1. CRIMINAL LAW — STALKING — HARASSMENT.

Contact with an alleged victim of stalking, in violation of a restraining order and the terms of a personal recognizance bond forbidding such contact, is not conduct that serves a legitimate purpose and therefore it may be construed as harassment that violates the stalking statute (MCL 750.411i; MSA 28.643[9]).

2. JUDGES — DISQUALIFICATION.

The disqualification of a judge is appropriate when the judge cannot impartially hear a case, including when the judge is personally biased or prejudiced for or against a party or attorney; an actual showing of prejudice is required except when the judge might have prejudged the case because of prior participation as accuser, investigator, factfinder, or initial decisionmaker (MCR 2.003[B][2]).

3. CRIMINAL LAW — AGGRAVATED STALKING — CRIMINAL CONTEMPT — CONSTITU-
   TIONAL LAW — DOUBLE JEOPARDY.
   A conviction of aggravated stalking, a finding of criminal contempt
   for the violation of a restraining order, and penalties for both aris-
   ing out of the same conduct do not violate constitutional protec-
   tions against double jeopardy (US Const, Am V; Const 1963, art 1,
   § 15; MCL 750.411i; MSA 28.643[9]).

4. CRIMINAL LAW — COURT-APPOINTED COUNSEL — REMOVAL.
   A trial court may remove a defendant's appointed counsel for gross
   incompetence, physical incapacity, or contumacious conduct.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Joseph K. Sheeran*, Prosecuting Attorney, and *Martha G. Mettee*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Richard B. Ginsberg*), for the defendant on appeal.

Before: O'CONNELL, P.J., and BANDSTRA and J. M. BATZER,* JJ.

BANDSTRA, J. Following a jury trial, defendant was convicted of aggravated stalking, MCL 750.411i; MSA 28.643(9), wilful and malicious destruction of a building resulting in damage in excess of $100, MCL 750.380; MSA 28.612, entering a dwelling house without permission from the owner or occupant, MCL 750.115; MSA 28.310, and entering the premises of another after being forbidden to do so by the occupant, MCL 750.552; MSA 28.820(1). Defendant was sentenced to concurrent terms of forty to sixty months for aggravated stalking, thirty-two to forty-eight months for malicious destruction of property, ninety days for entering a dwelling house without permission, and thirty days for entering the premises

---

* Circuit judge, sitting on the Court of Appeals by assignment.

without permission. He now appeals as of right. We affirm defendant's convictions, but remand for resentencing.

The victim of the stalking, defendant's wife, testified that in July 1989, she separated and filed for divorce from defendant, but reconciled with him despite the fact that defendant physically abused her and even threatened her life. In October 1992, the victim again separated from defendant and commenced divorce proceedings. The victim testified that she obtained a temporary restraining order in January 1993 after defendant threatened her. Thereafter, defendant repeatedly attempted to contact the victim and, on February 2, 1993, defendant came to the victim's residence and forcibly entered after the victim refused to let him into the home. The police arrived and arrested defendant. After defendant's arrest, he was released on a personal recognizance bond, which provided that he was to have no contact with the victim and was not to go near the victim's residence. However, defendant violated the terms of the bond by attempting to contact the victim. Defendant denied ever harassing, threatening, or physically abusing the victim.

After charges were brought, defense counsel filed a disqualification motion one day before trial, arguing that the trial judge should be disqualified because he had issued the temporary restraining order and had found defendant guilty of criminal contempt for violating that order. The trial judge denied the motion for disqualification, and trial began the next day as scheduled. At the conclusion of the two-day trial, defendant was found guilty of all charges. After trial, but before sentencing, defense counsel filed a supple-

mental motion to disqualify the trial judge. The trial judge subsequently entered an order removing defense counsel as defendant's attorney and appointing new counsel. The chief judge later denied defendant's motion for disqualification of the trial judge.

Defendant first argues that the trial court improperly excluded from the jury instructions the "legitimate purpose" portion of the harassment definition in the aggravated-stalking statute. The aggravated-stalking statute proscribes stalking, which it defines in part as "a willful course of conduct involving repeated or continuing harassment of another individual." MCL 750.411i(1)(e); MSA 28.643(9)(1)(e). "[C]onstitutionally protected activity or conduct that serves a legitimate purpose" is expressly excluded from the statutory definition of "harassment," MCL 750.411i(1)(d); MSA 28.643(9)(1)(d), and such protected activity or conduct has been defined to include labor picketing or other organized protests, *People v White*, 212 Mich App 298, 310; 536 NW2d 876 (1995), citing *Pallas v Florida*, 636 So 2d 1358, 1360 (Fla App, 1994).

Defendant asserts that he did not harass the victim within the meaning of the statute because he engaged in the conduct at issue for a legitimate purpose, i.e., to communicate with his wife and preserve his marriage. However, defendant's conduct was clearly in violation of the temporary restraining order and the conditions of defendant's bond, both of which forbade defendant from having contact with the victim. Defendant's conduct was, therefore, illegitimate, under usual definitions of "legitimate" as "according to the law; lawful," *Random House Webster's College*

*Dictionary* (1992), or "[t]hat which is lawful, legal, recognized by law, or according to law," Black's Law Dictionary (6th ed). A panel of our Court has previously and correctly concluded that the statute cannot be read as excluding from its definition of "harassment" conduct that is clearly illegitimate, notwithstanding an "ends justifies the means" argument that the conduct serves a legitimate purpose. *White, supra* at 311. The trial court properly excluded the "legitimate purpose" language from the jury instructions. The instructions given fairly presented the issues to be tried and sufficiently protected defendant's rights. *People v Daniel,* 207 Mich App 47, 53; 523 NW2d 830 (1994).

Defendant makes various arguments that the trial judge should have been disqualified. Disqualification is appropriate when a judge cannot impartially hear a case, including when the judge is personally biased or prejudiced for or against a party or attorney. MCR 2.003(B)(2); *In re Forfeiture of $1,159,420,* 194 Mich App 134, 151; 486 NW2d 326 (1992). An actual showing of prejudice is required before a trial judge will be disqualified. *Id.* An exception to this rule requiring a showing of "actual" prejudice occurs when the trial judge or decisionmaker might have prejudged the case because of a prior participation as an accuser, investigator, factfinder, or initial decisionmaker. *Crampton v Dep't of State,* 395 Mich 347, 351; 235 NW2d 352 (1975).

We have reviewed defendant's arguments and the lower court record and conclude that the trial judge and the chief judge appropriately denied defendant's motion for disqualification because there was no "actual showing" of prejudice against defendant or

defense counsel. Nor should the trial judge have been disqualified because he participated in the show-cause hearing on the temporary restraining order in defendant's divorce case. The trial judge did not participate as the initial factfinder or decisionmaker in pretrial proceedings in the instant criminal case. Defendant has failed to overcome the presumption of judicial impartiality. *Jackhill Oil Co v Powell Production, Inc*, 210 Mich App 114, 120; 532 NW2d 866 (1995). Although we believe that, as a practical matter, the chief judge should review a denial of a motion for disqualification before trial rather than after, any error was harmless in the instant case because the motion was properly denied.

Defendant asserts that his convictions of both aggravated stalking and criminal contempt for violation of the temporary restraining order constitute double jeopardy in violation of the Michigan and United States Constitutions, US Const, Am V; Const 1963, art 1, § 15. We disagree. The protection against multiple punishment for the same offense is designed to ensure that courts impose sentences within the limits set by the Legislature. *People v Sturgis*, 427 Mich 392, 399; 397 NW2d 783 (1986); *People v Ayers*, 213 Mich App 708, 716; 540 NW2d 791 (1995). Because the power to define crime and fix punishment is wholly legislative, the Double Jeopardy Clause is not a limitation on the Legislature, and the Legislature may specifically authorize penalties for what would otherwise be the "same offense." *Sturgis*, *supra* at 400; *Ayers*, *supra*. Cumulative punishment of the same conduct does not necessarily violate the prohibition against double jeopardy in either the federal or the state system. *Sturgis, supra; Ayers, supra.*

The determinative inquiry is whether the Legislature intended to impose cumulative punishment for similar crimes. *Sturgis, supra*; *People v Robideau*, 419 Mich 458, 485; 355 NW2d 592 (1984); *Ayers, supra.*

In this case, the aggravated-stalking statute provides:

> A criminal penalty provided for under this section may be imposed in addition to any penalty that may be imposed for any other criminal offense arising from the same conduct or for contempt of court arising from the same conduct. [MCL 750.411i(6); MSA 28.643(9)(6).]

Thus, it is clear from this subsection that the Legislature intended to impose multiple punishments for both of defendant's convictions of aggravated stalking and criminal contempt for violating the temporary restraining order.

With respect to defendant's assertion that his aggravated-stalking conviction should be overturned because the stalking statute is unconstitutionally vague, we conclude that defendant's argument is without merit. In *White, supra* at 308-309, a panel of this Court addressed this exact issue and held that the aggravated-stalking statute, MCL 750.411i; MSA 28.643(9), is not unconstitutionally vague.

Defendant also asserts that the trial court abused its discretion in removing sua sponte defendant's appointed counsel and appointing new counsel after trial but before sentencing. We agree. A trial court may remove appointed counsel for gross incompetence, physical incapacity, or contumacious conduct. *People v Arquette*, 202 Mich App 227, 231; 507 NW2d 824 (1993); *People v Abernathy*, 153 Mich App 567, 569; 396 NW2d 436 (1985); *People v Crawford*, 147

Mich App 244, 249; 383 NW2d 172 (1985). However, "careful inquiry" is needed before the "right of the defendant to representation by counsel of his choosing" can be abrogated. *Crawford, supra* at 250.

In this case, the trial judge entered an order removing defense counsel after counsel filed a supplement to the motion to disqualify the trial judge and provided a copy of the supplemental motion to another circuit judge in Bay County who was not associated with the case. Without giving notice to defense counsel or defendant, the trial judge entered an order stating:

> Robert K. Hess is presently appointed by the Court to represent the defendant in the above actions. Mr. Hess has engaged in a course of conduct involving making numerous allegations of personal impropriety and lack of integrity on the part of the Court. Mr. Hess has engaged in these attacks by reducing them to writing and distributing them to other persons who have no legal interest in the matter. The Court is satisfied that continuing Mr. Hess as court-appointed attorney in the above causes may lead the defendant to be concerned that his interests could be lost sight of and may lead to the appearance of injustice in this case.

The trial court did not make any findings regarding gross incompetence, physical incapacity, or contumacious conduct. Cf. *Abernathy, supra* ("[T]he trial court found that defense counsel's actions constituted gross incompetence."); *Crawford, supra.* The trial court did not hold any type of hearing or conduct a "careful inquiry" before removing defense counsel in this case. *Crawford, supra* at 249-250. We do not conclude that defense counsel's conduct constituted "gross incompetence" or "contumacious conduct." See *Arquette, supra* at 232. Thus, the trial judge

abused his discretion in removing defense counsel and substituting new counsel. Under these circumstances, a harmless-error analysis does not apply and defendant is not required to show prejudice. *People v Johnson*, 215 Mich App 658, 663-664; 547 NW2d 65 (1996); *People v Durfee*, 215 Mich App 677, 681; 547 NW2d 344 (1996).[1] Defendant is entitled to resentencing.

Because defendant is entitled to resentencing for his convictions, we need not address defendant's remaining arguments regarding the proportionality of his sentences. Furthermore, defendant's argument that he should be resentenced before a different judge is moot because the original sentencing judge is now retired. Therefore, defendant will necessarily be resentenced by a different judge.

Defendant's convictions are affirmed, but we remand for resentencing. We do not retain jurisdiction.

O'CONNELL, P.J (*concurring*). I agree that the trial judge abused his discretion in removing defense counsel and substituting new counsel. I also agree that the defendant was prejudiced by removal of his counsel. I find it unnecessary to determine if the harmless-error doctrine applies when the defendant has shown actual prejudice. I concur in the balance of the majority's opinion.

---

[1] The record shows that defendant was in fact prejudiced by the removal of his attorney. In response to the trial judge's inquiry regarding whether defendant's newly appointed attorney had anything to say before sentencing, the attorney stated that he was "very new" to the case, was "at a loss for words," and did not have "a lot of meaningful comments" to make because of his unfamiliarity with defendant and the case.

J. M. BATZER, J. *(concurring)*. I concur in the judgment and in large part with the opinions of the other members of the panel. I would, however, go further and say that defendant's motions for disqualification were legally frivolous. In *Liteky v United States*, 510 US ___; 114 S Ct 1147; 127 L Ed 2d 474, 488 (1994), the Supreme Court of the United States pertinently states:

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and indeed sometimes (as in a bench trial) necessary to completion of the judge's task. As Judge Jerome Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the *actors in* those court-house dramas called trials, he could never render decisions." *In re J P Linahan, Inc*, 138 F2d 650, 654 (CA 2 1943). Also not subject to deprecatory characterization as "bias" or "prejudice" are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.

The Supreme Court of the United States in *Liteky* further states:

> For all these reasons, we think that the "extrajudicial source" doctrine as we have described it, applies to [28 USC 455 (a)]. As we have described it, however, there is not much doctrine to the doctrine. The fact that an opinion held by a judge derives from a source outside judicial proceedings is not a *necessary* condition for bias or prejudice recusal, since predisposition developed during the course of

a trial will sometimes (albeit rarely) suffice. Nor is it a *sufficient* condition for "bias or prejudice" recusal, since *some* opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will *not* suffice. Since neither the presence of an extrajudicial source necessarily establishes bias, nor the absence of an extrajudicial source necessarily precludes bias, it would be better to speak of the existence of a significant (and often determinative) "extrajudicial source" *factor*, than of an "extrajudicial source" *doctrine*, in recusal jurisprudence.

The facts of the present case do not require us to describe the consequences of that factor in complete detail. It is enough for the present purposes to say the following: First, judicial rulings alone almost never constitute valid basis for a bias or partiality motion. See *United States v Ginnell Corp*, 384 US 563, 583, 16 L Ed 2d 778, 86 S Ct 1698 (1966). In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v United States*, 255 US 22, 65 L Ed 481, 41 S Ct 230 (1921), a World War I espionage case

against German-American defendants: "One must have a
very judicial mind, indeed, not [to be] prejudiced against
the German Americans" because their "hearts are reeking
with disloyalty." *Id.*, at 28, 65 L Ed 481, 41 S Ct 230. *Not*
establishing bias or partiality, however, are expressions of
impatience, dissatisfaction, annoyance, and even anger, that
are within the bounds of what imperfect men and women,
even after being confirmed as federal judges, sometimes
display. A judge's ordinary efforts at courtroom administra-
tion–even a stern and short-tempered judge's ordinary
efforts at courtroom administration–remain immune. [127 L
Ed 2d 490-491 (emphasis in the original).]

See also *Kolowich v Ferguson*, 264 Mich 668; 250 NW
875 (1933); *People v Upshaw*, 172 Mich App 386, 388;
431 NW2d 520 (1988); *People v Denny*, 114 Mich App
320, 325; 319 NW2d 574 (1982); *Wayne Co Prosecutor
v Doerfler*, 14 Mich App 428, 440; 165 NW2d 648
(1968); *United States v Shibley*, 112 F Supp 734, 738
(SD Cal, 1953) (favorably cited by the Michigan
Supreme Court in *Mahlen Land Corp v Kurtz*, 355
Mich 340; 94 NW2d 888 [1959]).

Though I agree that it is usually the better practice
to wait for another judge to rule on a motion for dis-
qualification if one is requested pursuant to MCR
2.003(C), in the circumstances here I disagree that the
trial judge should have postponed the trial scheduled
for the following day, so that the chief judge could
hear the motion. The trial judge correctly concluded
that the motion for disqualification was untimely and
that the defendant early on had the information form-
ing the core of his motion, but did nothing. The trial
judge concluded that defendant's counsel deliberately
mischaracterized what occurred in the earlier con-
tempt proceeding. The record supports the trial
judge's conclusions. For the trial judge to have post-

poned the trial in order to give another judge time to rule on the motion for disqualification on a patently frivolous motion and sham pleadings would not only disrupt the trial docket, but it could place the trial judge's imprimatur on a new way to postpone trial. The trial judge concluded that this was a motion filed at the last minute (filed on a Friday, heard on the following Monday, with trial scheduled for the next day, Tuesday) for purposes of delay. Again the record supports the trial judge. Interestingly enough, defendant, as part of his original motion, asked for the chief judge to rule on the motion in the event the trial judge denied the motion for disqualification. Apparently defendant's counsel did not want to even hear and consider the trial judge's reasons for denial before deciding that he wanted a second judge to rule on the motion.

Moreover and importantly, defendant's counsel was rude and impertinent to the trial court in commenting on the court's attitude. I do not wish to be misunderstood. I can understand why in some circumstances counsel might feel bound to make a motion for disqualification, even if such a motion were legally frivolous and not supported by case law. An attorney can certainly advocate for a change in the controlling law and make a record of such advocacy. Of course, as part of such advocacy, an attorney can be expected to invite the court's attention to the controlling precedent that is contrary to the position advanced. I can understand vigorous advocacy in support of such a motion. I do not, however, see a contemptuous *ad hominem* to the judge as being a proper part of vigorous professional advocacy. It seems to me that, as a point of professional advocacy, an argument inviting

the trial court's attention to its "attitude" can and should be made in accordance with basic courtroom etiquette and courtesy.

I concur, however, that a hearing should have occurred with the presence of defendant and his counsel and, perhaps, additional court-appointed counsel for defendant, who could independently advise and counsel defendant of any basis for concern of whether "defendant's interests were being lost sight of by his trial counsel," before any decision was made to remove his counsel and appoint another.

I concur with Judge O'CONNELL that we need not reach the issue whether infringement of the Sixth Amendment right to counsel operable through the Fourteenth Amendment can ever be harmless error, because it cannot be demonstrated to have been harmless at the sentencing here. Clearly defendant's new counsel at sentencing was insufficiently prepared to advocate on defendant's behalf and to advise and counsel defendant on his allocution opportunity. Accordingly, I agree that defendant is entitled to resentencing even though I perceive no violation of the principle of proportionality in the sentences imposed.