*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ERIN TAYLOR,

Defendant-Appellant.

UNPUBLISHED
May 11, 2026
2:09 PM

No. 370604
Oakland Circuit Court
LC No. 2023-287041-FH

Before: BORRELLO, P.J., and M. J. KELLY and ACKERMAN, JJ.

PER CURIAM.

Defendant[1] appeals as of right their jury-trial convictions of two counts of aggravated stalking, MCL 750.411i. Defendant was sentenced to 15 months to five years' imprisonment for each count, to be served concurrently. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This appeal arises from defendant's repeated and threatening communications directed at the complainants, Gregory Czerniak and Stephen Czerniak, in contravention of a court order and personal protection orders (PPOs). Defendant and Gregory were previously married and share a child, JC. Beginning in February 2021, defendant engaged in persistent messaging to both Stephen and Gregory. Defendant also attempted to remove JC from Stephen's residence, and, upon being informed that further attempts would constitute trespass, ceased the effort. Gregory subsequently filed for divorce, which was finalized on March 2, 2022. A PPO was issued in favor of Stephen on October 25, 2022, and another in favor of Gregory on December 6, 2022. Despite these orders, defendant continued to communicate with both Stephen and Gregory, thereby violating the PPOs.

Defendant was charged in the district court with aggravated stalking and with malicious use of telecommunications services under MCL 750.540e. As a condition of pretrial release, defendant was prohibited from contacting either Stephen or Gregory Czerniak. Notwithstanding

---

[1] Defendant uses they/them pronouns.

this restriction, defendant continued to transmit communications—including threats directed at Gregory and his family—which resulted in revocation of defendant's bond. The charge of malicious use of telecommunications services was subsequently dismissed, and defendant was re-charged with two counts of aggravated stalking. During trial, defense counsel moved for a tailored jury instruction addressing the statutory exceptions to the definition of harassment. The trial court declined to use defense counsel's proposed instruction, opting instead to provide the jury with the statutory definition of harassment and its enumerated exceptions. Defendant was convicted and sentenced as stated above and this appeal thereafter ensued.

## II. ANALYSIS

Defendant asserts that their convictions should be vacated or, alternatively, that the matter should be remanded for a new trial on the grounds that: (1) the trial court failed to adequately instruct the jury that communications pertaining to parental rights may constitute a statutory exception to harassment and serve a legitimate purpose; (2) the evidence was insufficient to establish that a reasonable person would perceive defendant's communications as threatening; and (3) defense counsel rendered ineffective assistance by failing to properly prepare and request a jury instruction regarding the legitimate purpose exception as it relates to parental rights.

## A. JURY INSTRUCTIONS

Defendant argues that the trial court committed reversible error by failing to adequately instruct the jury on fundamental constitutional protections, specifically with respect to the potential application of protected communications regarding parental rights.

Defense counsel was afforded an opportunity to object to the final jury instructions but, instead, affirmatively approved them. This constitutes waiver of the issue. Our Supreme Court has articulated waiver as

> the intentional relinquishment or abandonment of a known right. One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error. When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver. [*People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (citation and quotation marks omitted).]

Although we conclude that the issue has been waived, in the interest of thoroughness, we nonetheless address the matter to determine whether defendant has presented a claim that would warrant either a remand for a new trial or a reversal of defendant's convictions by this Court.

Claims of instructional error are subject to de novo review, with this Court considering the jury instructions in their entirety to ascertain whether error occurred. See *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018). De novo review requires independent consideration of the issues without deference to the trial court. *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019). Here, defendant did not specifically request an instruction concerning the exception for communications relating to parental rights; thus, the issue is unpreserved. *People v Sabin (On*

*Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000). Unpreserved challenges to jury instructions are reviewed for plain error affecting substantial rights. *People v Everett*, 318 Mich App 511, 526; 899 NW2d 94 (2017). To avoid forfeiture, defendant must establish that (1) an error occurred, (2) the error was plain (clear or obvious), and (3) the error affected substantial rights. *Id*. at 526-527.

A trial court must provide jury instructions that enable the jury to correctly and intelligently decide the case. *Traver*, 502 Mich at 31. The instructions must set forth all elements of the charged offense and not exclude material issues, defenses, or theories supported by the evidence. *Id*. Instructional errors that omit an element or misstate the law do not, per se, render a trial fundamentally unfair or unreliable. *Kowalski*, 489 Mich at 501. Reversal is warranted only where, upon review of the entire record, it is more probable than not that the error was outcome determinative. *Everett*, 318 Mich App at 528. The defendant bears the burden of demonstrating that any error undermined the reliability of the verdict. *Id*. at 528-529. An imperfect instruction does not justify reversal if the instruction fairly presented the issues and adequately protected the defendant's rights. *Traver*, 502 Mich at 34.

Defendant maintains that the trial court erred by omitting a specific instruction regarding communications relating to parental rights as exceptions to harassment and as constituting legitimate purposes. However, the record reflects that the trial court administered the standard jury instructions, including all elements of aggravated stalking, and instructed that each element must be proven beyond a reasonable doubt. The court further instructed on the definition of harassment and the statutory exceptions, including constitutionally protected activity and conduct serving a legitimate purpose. Accordingly, the jury received legally sufficient instructions. *People v Montague*, 338 Mich App 29, 38; 979 NW2d 406 (2021) (no error where instructions fairly present the issues and sufficiently protect the defendant's rights).

Defendant's assertion that their communications served a legitimate purpose—namely, to pursue a relationship with their daughter, demonstrate mental fitness, and address alleged interference with parental rights—is unavailing, as the conduct at issue was not concerning any of those issues but rather was clearly in violation of a no-contact order and valid PPOs.

In *People v Coones*, 216 Mich App 721, 725-726; 550 NW2d 600 (1996), this Court held that omission of a "legitimate purpose" instruction was proper where the defendant's conduct was "clearly in violation of the temporary restraining order and the conditions of defendant's bond, both of which forbade defendant from having contact with the victim." This case is analogous as defendant's conduct was likewise clearly illegitimate because it contravened both PPOs issued at the behest of the complainants and the district court's November 23, 2022, no-contact order. Stephen obtained a PPO on October 25, 2022, yet defendant persisted in communicating with him, including by using vulgar language and appearing at his residence despite being warned of trespass. Gregory's PPO was entered on December 6, 2022, and defendant continued to send him messages thereafter. The majority of these communications were wholly unrelated to parental rights, consisting instead of YouTube links, nonsensical statements, vulgarities, threats of violence, and references to cannibalism. None of the proscribed communications were for purposes of parenting time or related to concerns about JC. Such threats do not constitute constitutionally protected speech, as true threats fall outside the ambit of First Amendment

protections. *People v Burkman*, 513 Mich 300; 15 NW3d 216 (2024) (true threats are statements conveying a serious intent to commit unlawful violence to a specific person or group).

Moreover, the jury instructions here were more comprehensive than those in *Coones*, as the trial court included an instruction that harassment does not encompass constitutionally protected activity or conduct serving a legitimate purpose. Defendant has failed to demonstrate that their conduct was constitutionally protected or legitimately purposed, nor was the court required to provide further definitional guidance. The trial court's instructions fairly presented the issues and adequately protected defendant's rights. *Traver*, 502 Mich at 34. Accordingly, defendant's claim is without merit.

## B. SUFFICIENCY OF THE EVIDENCE

Defendant asserts that the evidence adduced at trial was insufficient to establish that a reasonable person, apprised of the parties' prior relationship, would have perceived defendant's conduct as threatening.

Appellate review of evidentiary sufficiency is conducted de novo. *People v Montague*, 338 Mich App 29, 44; 979 NW2d 406 (2021). In conducting this review, this Court independently evaluates the record, without deference to the trial court's determinations. *Beck*, 504 Mich at 618. The standard requires assessment of whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). A conviction unsupported by evidence sufficient to establish guilt beyond a reasonable doubt is violative of due process and cannot stand. *People v Prude*, 513 Mich 377, 384; 15 NW3d 249 (2024); US Const, Ams V and XIV; Const 1963, art 1, § 17. The prosecution bears the burden of proving each element of the charged offense beyond a reasonable doubt. *People v Posey*, 512 Mich 317, 323; 1 NW3d 101 (2023). The prosecution is not required to negate every theory consistent with innocence but must prove the elements notwithstanding any contradictory defense evidence. *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018). Both direct and circumstantial evidence, and the reasonable inferences arising therefrom, may suffice. *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016). The trier of fact, not the appellate court, determines which inferences may be drawn from the evidence and the weight to be accorded them. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). The appellate court does not revisit questions of witness credibility or evidentiary weight. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

Here, defendant faced two counts of aggravated stalking under MCL 750.411i, predicated on repeated communications directed at the complainants in violation of a court order and two PPOs. The offense of aggravated stalking comprises the elements of stalking and the existence of an aggravating circumstance. *People v Eichler*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371360); slip op at 4. The statute defines stalking as a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and that actually causes the victim to experience such emotional states. MCL 750.411i(e). The trial court defined harassment in accordance with the statute as conduct directed toward a victim, including,

-4-

but not limited to, repeated or continuing unconsented conduct that would cause a reasonable individual to suffer and that actually causes the victim to suffer emotional distress. Aggravating circumstances are further delineated in MCL 750.411i(2):

> An individual who engages in stalking is guilty of aggravated stalking if the violation involves any of the following circumstances:
>
> (a)     At least 1 of the actions constituting the offense is in violation of a restraining order and the individual has received actual notice of that restraining order or at least 1 of the actions is in violation of an injunction or preliminary injunction.
>
> *   *   *
>
> (c)     The course of conduct includes the making of 1 or more credible threats against the victim, a member of the victim's family, or another individual living in the same household as the victim.

Our review of the record leads us to conclude that the prosecution adduced during trial ample evidence that a reasonable person would have perceived defendant's conduct as threatening or harassing. The record reveals evidence of the district court no-contact order, as well as the PPOs issued to Stephen and Gregory. Defendant does not dispute being properly served with the PPOs or being appraised of the district court no-contact order. Accordingly, defendant had actual notice of these orders. Furthermore, the prosecution submitted extensive documentary evidence of defendant's repeated violations of these orders. Stephen testified that defendant's communications were incessant and that he felt harassed to the point of being unable to live his life normally. Gregory described being "terrified," and undertook security measures and sought mental health treatment as a result of defendant's threats.

Defendant contends that the communications at issue merely reflected the parties' historically shared dark humor. However, defendant's attempts to recharacterize these communications as "dark humor" disregard the record and the material change in the nature of the relationship post-divorce. Following his divorce from defendant in March of 2023, Gregory expressly disavowed any desire for further interaction with defendant, except as necessary. Defendant further posits that a reasonable person, aware of defendant's mental health history, would not have perceived the threats as credible. However, the record contains evidence that defendant previously confronted Gregory while armed with a maul, and Gregory credibly testified that defendant's mental health struggles, including multiple hospitalizations, increased the credibility and severity of the threats received.

With respect to Stephen, defendant maintains that no direct threats were made and that the communications consisted merely of crude remarks insufficient to engender fear for one's life. We note that MCL 750.411i does not require proof that the victim feared for their life, but rather that the victim experienced terror, intimidation, or harassment. Defendant's conduct included persistent violations of court orders, vulgar name-calling, threats, and physically appearing uninvited at Stephen's residence, pounding on the door and surveilling the premises after being explicitly warned against trespass. Stephen's testimony that he felt "terrified" and "harassed" is amply supported by the record. Defendant's challenge to Stephen's credibility is misplaced, as

credibility determinations and the weight afforded to testimony are exclusively within the province of the jury. *People v Baskerville*, 333 Mich App 276, 283-284, 963 NW2d 620 (2020).

In sum, the jury was presented with sufficient evidence to conclude that a reasonable person would have felt "terrorized, frightened, intimidated, threatened, harassed, or molested" by defendant's conduct, as contemplated by MCL 750.411i(e). When viewed in the light most favorable to the prosecution, the record supports defendant's convictions.

## C. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant asserts that trial counsel rendered constitutionally ineffective assistance by failing to adequately prepare and advocate for the inclusion of a jury instruction defining "legitimate purpose" within the meaning of MCL 750.411i.

Because defendant did not seek a new trial or remand for an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973), this issue is unpreserved for appellate review. See *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012); *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). The question of whether a defendant received ineffective assistance is a mixed question of fact and constitutional law. *People v Geary*, ___ Mich App at ___; ___ NW3d ___ (2025) (Docket No. 371889). Factual findings are reviewed for clear error, and constitutional questions are reviewed de novo. *Id.*; see also *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made. *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018). De novo review entails independent consideration, without deference to the lower court. *Beck*, 504 Mich at 618. Where, as here, the claim is unpreserved, review is limited to errors apparent from the record. *People v Matuszak*, 263 Mich App 42, 46; 687 NW2d 342 (2004).

Criminal defendants are guaranteed the right to counsel under both the Michigan and United States Constitutions. *Yeager*, 511 Mich at 488. To establish ineffective assistance, a defendant must show: (1) counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's deficient performance, there is a reasonable probability the result would have been different. *Geary*, ___ Mich App at ___; see also People v Ackley, 497 Mich 381, 389; 870 NW2d 858 (2015) (defining reasonable probability as sufficient to undermine confidence in the outcome).

The first prong requires a showing that, under prevailing professional norms and in light of the circumstances, counsel's acts or omissions fell outside the wide range of professionally competent assistance. The second prong is satisfied by demonstrating a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v Jones*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 362854).

There exists a strong presumption of effective assistance, and defendant bears the burden to establish the factual predicate for an ineffectiveness claim. *Geary*, ___ Mich App at ___; *People v Thurmond*, 348 Mich App 715, 741; 20 NW3d 311 (2023). If a legitimate strategic reason can be ascribed to counsel's conduct, it will not be deemed objectively unreasonable. *People v Haynes*,

338 Mich App 392, 429-430; 980 NW2d 66 (2021). However, counsel's strategy must be objectively reasonable and not insulated from review merely by being labeled as such. *Ackley*, 497 Mich at 388-389.

Defendant's argument that counsel was constitutionally ineffective for failing to secure an instruction regarding "legitimate purpose" is meritless. As previously discussed, the record demonstrates that defendant's conduct was patently illegitimate, consisting of threats and violations of court orders and PPOs, not communications motivated by genuine parental concerns. See *Coones*, 216 Mich App at 725-726. It is well established that failure to raise a meritless argument or futile objection does not constitute ineffective assistance. *Thurmond*, 348 Mich App at 741. Moreover, defendant's communications rarely referenced JC, and the conduct in question bore no discernible nexus to the exercise of parental rights.

Our review of the record in this matter leads us to conclude that defendant's assertion that counsel was unprepared is both unfounded and contradicted by the record. Defense counsel specifically requested a tailored jury instruction regarding conduct serving a legitimate purpose, drafted a proposed instruction, and presented it to the trial court. As a result of counsel's advocacy, the trial court instructed the jury on the statutory definition of harassment, including the exclusions for constitutionally protected activity and conduct undertaken for a legitimate purpose. There is no indication that the jury required further explanation. Accordingly, trial counsel's performance was objectively reasonable.

Affirmed.

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Matthew S. Ackerman