*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Guardianship of JO and Contempt of GERALD ZAMBOROWSKI.

| | |
|---|---|
| IRINA POLITANO, Guardian of JO, a legally incapacitated individual, | UNPUBLISHED<br>April 20, 2026<br>1:25 PM |
| Appellee, | |
| v | No. 376883 |
| | St. Clair Probate Court |
| GERALD ZAMBOROWSKI, | LC No. 25-110109-GA |
| Appellant. | |

Before: GADOLA, C.J., and MURRAY and M. J. KELLY JJ.

PER CURIAM.

Gerald Zamborowski appeals as of right the July 2, 2025 order holding him in criminal contempt of court. We reverse.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This appeal arises out of alleged misrepresentations made by Zamborowski during guardianship proceedings concerning his former client, JO. On April 14, 2025, Stephen Dutcher of Adult Protective Services filed a petition to appoint a guardian for JO. The trial court appointed a guardian ad litem (GAL) for JO that same day, and a hearing was scheduled for April 16, 2025. JO, meanwhile, indicated to the GAL that he wished to contest her appointment and, on April 16, 2025, Zamborowski filed both an appearance indicating that he had been retained by JO and a jury demand.

At the April 16, 2025 hearing on Dutcher's petition, Zamborowski, in an attempt to explain the scope of his cross-examination of Dutcher to the trial court, disclosed that Zamborowski "did not have a conversation with [JO] about [any conversations between JO and Dutcher] since he received the papers. I got them this morning." This exchange followed:

*The Court*: Well, how did he retain you to be his attorney if you've not had a conversation with him? How did you get retained to file an appearance on his behalf?

*Mr. Zamborowski*: He's been my client over the years for a long, long time.

*The Court*: Did he hire you as an attorney?

*Mr. Zamborowski*: He told me that he wanted to, yes.

*The Court*: Did he hire you as an attorney after he was served with this paperwork?

*Mr. Zamborowski*: Sure.

*The Court*: Are you sure that's true, Mr. Zamborowski?

*Mr. Zamborowsk* [sic]: If a—

*The Court*: Because if I find out it's not, I'll find you in contempt—

*Mr. Zamborowski*: What do you—

*The Court*: —again for not telling me the truth. So listen carefully to my question and answer it.

Did [JO] and you have a conversation after he received this paperwork where he asked you to be his attorney and file an appearance on his behalf?

*Mr. Zamborowski*: [JO] . . . has told me he wants me to help him. He's been calling me every day telling me things.

*The Court*: So you are not answering my question, Mr. Zamborowski.

*Mr. Zamborowski*: I think I am.

*The Court*: Last try.

After [JO] got this guardianship paperwork, did he contact you and ask you to file an appearance as his attorney on his behalf?

*Mr. Zamborowski*: He didn't ask me to file an appearance.

*The Court*: Okay.

*Mr. Zamborowski*: However, he asked me to help him.

*The Court*: You are not representing [JO]. I am striking your appearance. I am reporting you to the State Bar for making misrepresentations and attempting to appear on behalf of [JO].

\* \* \*

*Mr. Zamborowski*: He did ask me to help him with this matter. He said you will help me in this matter, right? I said [JO]—

*The Court*: When did he do that?

*Mr. Zamborowski*: Last night, after he got some papers on the phone.

*The Court*: So you had a conversation with him—

*Mr. Zamborowski*: Not in person.

*The Court*: —after he got the paperwork. Is that true?

*Mr. Zamborowski*: Sure.

*The Court*: Okay.

\* \* \*

*The Court*: We're going to handle this a different way. I'm show causing you because I think you're in contempt of court, and we're going to go from there.

In the meantime, during a June 16, 2025 hearing on the underlying guardianship petition, the trial court expressed additional concerns about Zamborowski's conduct. Specifically, the trial court stated that it believed Zamborowski had, as was alleged to have been the case with his appearance, filed JO's jury demand without first consulting with JO. The trial court therefore entered an order that prohibited Zamborowski from contacting JO about the jury demand except through JO's court-appointed GAL. Approximately three weeks later, the GAL determined that JO did in fact want a jury trial, and the prohibition was lifted.

At a July 2, 2025 evidentiary hearing regarding Zamborowski's alleged contempt, the trial court reiterated its concern about Zamborowski premature representation of JO, but now also emphasized Zamborowski's filing of the jury demand:

The first concern I had is I believe that you filed a jury demand on this guardianship matter in an effort to delay the court addressing the allegations without talking to [JO]. And the only reason I believe that is when you were in court you told me I've not talked to [JO], but that was after you had filed the jury demand.

Zamborowski explained that the transcript from the April 16, 2025 hearing showed that the first count of criminal contempt related to his filing of an appearance, not his filing of a jury demand. That former concern, Zamborowski contended, was predicated on a misunderstanding about what

he meant on April 16, 2025, when he said that he had not yet met with or discussed the case with JO. Zamborowski meant only to say that he had not had a chance to sit down and discuss the petition with JO, although Zamborowski was told by JO over the phone that JO had just been "served with something."

JO's caregiver, Claire Nowak, testified that she was with JO when he was served the petition and subsequently called Zamborowski to retain him. Zamborowski then introduced into evidence his phone records, which showed two calls made to a number Zamborowski testified belonged to JO, one placed at 3:30 p.m. and the other placed at 3:35 p.m. A third call was then placed to the trial court at 3:44 p.m., which appeared to indicate that Zamborowski contacted the trial court to make his appearance only after speaking with JO that afternoon. The trial court ultimately found the evidence presented unpersuasive and held Zamborowski in criminal contempt.

## II. SUFFICIENCY OF THE EVIDENCE

Zamborowski argues that there was insufficient evidence to support the trial court's finding of criminal contempt. We agree.

The sufficiency of the evidence in a bench trial is reviewed de novo. *In re Contempt of Henry*, 282 Mich App 656, 677; 765 NW2d 44 (2009). "A trial court's findings in a contempt proceeding are reviewed for clear error and must be affirmed on appeal if there is competent evidence to support them." *Id*. at 668. Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id*. at 669.

Under MCL 600.1711(1), a trial court may summarily punish contempt that is committed "in the immediate view and presence of the court." *In re Dudzinski*, 257 Mich App 96, 108; 667 NW2d 68 (2003). Such "direct contempt" occurs if all the facts necessary to find the contempt are within the personal knowledge of the judge. *In re Scott*, 342 Mich 614, 619; 71 NW2d 71 (1955). In contrast, "all other alleged contempts depend solely upon evidence, and are inferences from fact." *Id*.

"The elements necessary to support a conviction of criminal contempt are (1) a wilful disregard or disobedience of the order of the court, and (2) that the contempt is clearly and unequivocally shown." *People v MacLean*, 168 Mich App 577, 579; 425 NW2d 185 (1988). "A wilful disregard consists of an act, omission, or statement tending to impair the authority or impede the functioning of the court." *Id*. Criminal contempt must be proven beyond a reasonable doubt. *DeGeorge v Warheit*, 276 Mich App 587, 592; 741 NW2d 384 (2007).

At the outset of Zamborowski's evidentiary hearing, the trial court expressly stated that the sole evidentiary basis for its accusation was that Zamborowski appeared to have admitted filing an appearance and jury demand before speaking with his client:

> The first concern I had is I believe that you filed a jury demand on this guardianship matter in an effort to delay the court addressing the allegations without talking to [JO]. *And the only reason I believe that* is when you were in court you told me I've

not talked to [JO], but that was after you had filed the jury demand. [Emphasis added.]

At the conclusion of that hearing, the trial court's stated factual findings were no more substantial. The trial court began by, again, pointing to Zamborowski's contradictory statements during the April 16, 2025 hearing. The trial court then seemed to suggest that Zamborowski's contradiction was an accidental confession because "other people *could* contact Mr. Zamborowski and say here's what's going on." (Emphasis added.)

Zamborowski did say on April 16, 2025, that he "did not have a conversation with [JO] about this since he received the papers. I got them this morning." Zamborowski's clarifying statement, "I got them this morning," is consistent with the explanation he would later offer: When he said he had not yet had a conversation with JO, Zamborowski meant only that he had not sat down with JO to discuss the petition *because Zamborowski did not have the petition itself until the morning of April 16, 2025.*

Zamborowski consistently maintained that he did in fact speak with JO before filing an appearance and jury demand. To support that claim, Zamborowski pointed out that he could not have known the case number—or that there even was a guardianship case involving JO—if he had not spoken with JO before filing an appearance and jury demand. Zamborowski also presented the witness testimony of Nowak. And although the trial court appears not to have found Nowak's testimony particularly credible, Zamborowski produced phone records that corroborated Nowak's testimony and supported his version of events. But the trial court dismissed the phone records out of hand and reemphasized Zamborowski's alleged misrepresentations: "And testimony today, obviously I've got more detail from the phone calls and those kind of things. But it really just gets me back to the point, why did he tell me he hadn't talked to [JO] when he was making those decisions?"

The trial court cited no evidence that Zamborowski's statement was inconsistent with the explanation he provided. Zamborowski, on the other hand, provided an explanation for the statement that concerned the court and supported that explanation with witness testimony and documentary evidence. The trial court's only rebuttal was to speculate about an alternative scenario in which Zamborowski was contacted by either Nowak or her husband about the case; however, the trial court cited no evidence to support that claim. Rather, the trial court simply repeated the one piece of evidence it believed it had.

Whether Zamborowski was not honest with the trial court depended upon facts outside the personal knowledge of the trial court; therefore, Zamborowski could not be punished so summarily, based solely upon an alleged misstatement made in court. *In re Scott*, 342 Mich at 619. Self-contradiction alone cannot be a basis for the exercise of a power our Supreme Court has deemed "awesome" and to be used "with the utmost restraint." *In re Hague*, 412 Mich 532, 555; 315 NW2d 524 (1982).

### III. CONTEMPT PROCEEDINGS AND DUE PROCESS

Next, Zamborowski argues that the trial court violated his due-process right to notice of his criminal contempt charges and their factual bases, thereby depriving him of an opportunity to prepare a defense. We agree.

Whether a person has been afforded due process is a question of law that is reviewed de novo. *In re Contempt of Henry*, 282 Mich App at 668.

Criminal contempt proceedings require "some, but not all, of the due process safeguards of an ordinary criminal trial." *In re Contempt of Dougherty*, 429 Mich 81, 91; 413 NW2d 392 (1987). These due-process safeguards include the right to be informed of the nature of the charges being made and the opportunity to prepare a defense. *In re Contempt of Rochlin*, 186 Mich App 639, 649; 465 NW2d 388 (1990). "However, the charges need not be set forth in the form and detail of a criminal information . . . ." *In re Contempt of Henry*, 282 Mich App at 672 (quotation marks and citation omitted).

According to MCR 3.606(A), "[f]or a contempt committed outside the immediate view and presence of the court, on a proper showing on ex parte motion supported by affidavits, the court shall either (1) order the accused person to show cause, at a reasonable time specified in the order, why that person should not be punished for the alleged misconduct; or (2) issue a bench warrant for the arrest of the person." MCL 600.1711(2), for its part, provides that "[w]hen any contempt is committed other than in the immediate view and presence of the court, the court may punish it by fine or imprisonment, or both, *after proof of the facts charged has been made by affidavit or other method and opportunity has been given to defend.*" (Emphasis added). See also *In re Moroun*, 295 Mich App 312, 333; 814 NW2d 319 (2012). To be valid, the affidavit must "sufficiently state facts that, along with legitimate inferences from the facts, constitute contempt as a matter of law." *Ferranti v Electrical Resources Co*, 330 Mich App 439, 444; 948 NW2d 596 (2019).

No such proof in conformity with the requirements of MCL 600.1711(2)—whether by affidavit or otherwise—appears in the lower court file. The trial court's April 16, 2025 show-cause order simply states that "GERLAD [sic] M. ZAMBOROWSKI, IS ORDERED TO APPEAR AND TO SHOW CAUSE WHY HE SHOULD NOT BE HELD IN CONTEMPT FOR MAKING MISREPRESENTATIONS TO THE COURT." Zamborowski then filed a motion for a bill of particulars on April 30, 2025, requesting that the trial court state "the exact number of alleged misrepresentations made in the April 16 hearing and the content of each statement verbatim [sic]." Zamborowski's motion was not discussed during the May 7, 2025 show-cause hearing. Indeed, the trial court would not decide that motion until July 7, 2025, denying the motion five days *after* the hearing during which the trial court found Zamborowski in criminal contempt.

It appears that Zamborowski understood the charges against him by the end of his May 7, 2025 show-cause hearing. But Zamborowski did not appear to have gone into that hearing with such an understanding. When asked by the trial court whether he understood the court's concerns, Zamborowski demonstrated that he did not by incorrectly characterizing those concerns, which elicited the following explanation from the trial court:

> *The Court*:  So, Mr. Zamborowski, as I explained, the issue I had is you contacted the court in the afternoon before [JO] had been served with the paperwork.
>
> *Mr. Zamborowski*:  And that's wrong.
>
> *The Court*:  Well, and then you told me that you had not talked to your client after he had received the paperwork.  So then I asked you the obvious question, then how did [JO] know about the hearing to retain you, to represent him?

Notably absent are any concerns about the circumstances under which Zamborowski filed a jury demand on behalf of JO.  That issue was brought up for the first time during a June 16, 2025 hearing on the underlying guardianship petition.  And although Zamborowski attempted to address the jury demand issue in his July 2, 2025 motion to dismiss—again suggesting at least *some* awareness of the nature of the charge against him—he did so without the benefit of being provided any form of proof of the facts charged beforehand, having only the trial court's June 16, 2025 in-court statements as notice of the charged conduct.  Ultimately, the jury demand issue, which the trial court referenced when making its ruling, appears to have at least factored into the trial court's final decision to hold Zamborowski in contempt.  Zamborowski was not given notice of the charges against him in a manner consistent with due process, which under MCL 600.1711(2) and MCR 3.606(A) requires some form of proof of the facts charged such that the alleged contemnor has an opportunity to mount a defense.

## IV.  ACTUAL OR APPARENT BIAS AND JUDICIAL DISQUALIFICATION

Zamborowski next argues that the trial court's comments and conduct throughout both Zamborowski's contempt proceedings and the underlying guardianship proceedings demonstrate actual and apparent bias.  Therefore, any future contempt proceedings should be adjudicated by a different trial court judge.  We agree.

"In reviewing a motion to disqualify a judge, [we] review[] the trial court's findings of fact for an abuse of discretion and review[] the court's application of those facts to the relevant law de novo." *In re Contempt of Henry*, 282 Mich App at 679.  "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Kern v Kern-Koskela*, 320 Mich App 212, 231; 905 NW2d 453 (2017), quoting *In re MKK*, 286 Mich App 546, 564; 781 NW2d 132 (2009).

"The Due Process Clause requires an unbiased and impartial decisionmaker." *Cain v Mich Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996).  However, due process does not require a judge to recuse himself or herself absent actual bias, "unless the situation is one in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *People v Loew*, 514 Mich 158, 175; 22 NW3d 323 (2024) (quotation marks and citation omitted).

MCR 2.003(C)(1)(a), requires disqualification of a judge when the judge demonstrates bias or prejudice against a party or attorney.  "Absent actual bias or prejudice, a judge will not be disqualified…." *Cain*, 451 Mich at 495.

Under MCR 2.003(C)(1)(b)(*ii*), disqualification of a judge is warranted when the judge has " 'failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.' " *Loew*, 514 Mich at 175, quoting MCR 2.003(C)(1)(b)(*ii*). Canon 2(A) states that "[a] judge must avoid all impropriety and appearance of impropriety." *Id*. quoting Canon 2(A). To decide whether a judge has failed to avoid the appearance of impropriety, we consider "whether an ordinary person might reasonably question the judge's integrity, impartiality, or competence on the basis of the judge's observable conduct." *Loew*, 514 Mich at 175-176.

Either way, there is a strong presumption of judicial impartiality, and the party seeking to rebut that presumption bears a heavy burden. *Id*. at 186. "[A]bsent deep-seated favoritism or antagonism making the exercise of fair judgment impossible, judicial rulings or opinions are not valid grounds for alleging bias." *People v Gaines*, 306 Mich App 289, 313; 856 NW2d 222 (2014). In addition, judicial remarks that are critical or disapproving of counsel or the parties generally do not support a claim of judicial bias. *Cain*, 451 Mich at 497 n 30.

"When considering whether to remand to a new judge, the 'general concern . . . is whether the appearance of justice will be better served if another judge presides over the case.' " *Kuebler v Kuebler*, 346 Mich App 633, 696; 13 NW3d 339 (2023), quoting *Bayati v Bayati*, 264 Mich App 595, 602; 691 NW2d 812 (2004). We "may remand to a different judge if the original judge would have difficulty in putting aside previously expressed views or findings, if reassignment is advisable to preserve the appearance of justice, and if reassignment will not entail excessive waste or duplication." *Kuebler*, 346 Mich App at 696 (quotation marks and citation omitted). However, we will not remand to a different judge just because the original judge reached incorrect legal conclusions, and repeated rulings against a party—no matter how erroneous or vigorously expressed—are not disqualifying. *Id*.

Zamborowski first argues that the trial court demonstrated bias when it appeared to presume Zamborowski guilty during the criminal contempt proceedings; engaged in negative innuendo about Zamborowski's motives; and made inflammatory allusions to prior cases involving Zamborowski. However, judicial remarks that are critical or disapproving do not, without more, support a claim of judicial bias. *Cain*, 451 Mich at 497 n 30.

Zamborowski further argues that the trial court demonstrated bias by issuing contempt citations "with abandon." As Zamborowski notes, "[a]buse of the contempt power, including unjustified threats to hold persons in contempt, constitutes misconduct warranting discipline." *In re Hague*, 412 Mich at 555. However, even granting that the trial court's issuance of contempt orders was an unjustified abuse of the contempt power worthy of discipline, erroneous judicial rulings are not valid grounds for alleging bias. *Gaines*, 306 Mich App at 313. See also *People v Roscoe*, 303 Mich App 633, 647; 846 NW2d 402 (2014) (stating that "a trial judge's ruling regarding the admission of evidence, no matter how erroneous, is not grounds for disqualification"). For these reasons, the trial court's words and conduct do not establish actual bias or prejudice against Zamborowski.

Nonetheless, the judge presiding over this case has an extensive history with Zamborowski. On a number of occasions, the trial court's own words appear to indicate this shared history continues to color interactions between them. On one occasion, the trial court cautioned parties—outside the presence of Zamborowski—that anyone taking suggestions from Zamborowski was

"running the risk that I am going to paint you with the same brush." On another occasion, the trial court stated that Zamborowski has given him the "lasting impression" that Zamborowski's judgment is a cause for concern. These remarks suggest that the trial court would have difficulty putting aside its previously expressed views, and we believe the appearance of justice would be better served by remanding Zamborowski's ongoing contempt proceedings to a different judge. *Kuebler*, 346 Mich App at 696.

## V. GUARDIANSHIP PROCEEDINGS AND THE RIGHT TO COUNSEL

Finally, Zamborowski argues that the trial court erred by enjoining him from communicating with JO with respect to JO's demand for a jury trial except through JO's court-appointed GAL. We disagree.

Questions of constitutional law are reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

"A person for whom a guardian has been sought has statutory rights similar to those of a criminal defendant, including the right to retained or appointed counsel, and to a jury trial." *In re Malloy Guardianship*, 513 Mich 148, 157; 15 NW3d 142 (2024), citing MCL 700.5304 and MCL 700.5306a. However, this Court has declared that, with respect to criminal defendants, "the right to counsel of choice is not absolute" and must be weighed against "the public's interest in the prompt and efficient administration of justice" in order for a court to find a constitutional violation. *People v Akins*, 259 Mich App 545, 557; 675 NW2d 863 (2003) (quotation marks and citations omitted). Further still, the United States Supreme Court has held that courts have "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat v United States*, 486 US 153, 160; 108 S Ct 1692; 100 L Ed 2d 140 (1988). Therefore, "careful inquiry is needed before the right of the defendant to representation by counsel of his choosing can be abrogated." *People v Coones*, 216 Mich App 721, 729; 550 NW2d 600 (1996).

The trial court imposed a limited restriction on JO's right to counsel when it ordered that Zamborowski refrain from speaking with JO "regarding [JO's] right to a Jury Trial until [the GAL] has spoken with [JO]." In light of the trial court's concerns about Zamborowski's potential misrepresentations with respect to the jury trial issue, this limited restriction on JO's right to retained counsel is consistent with upholding the trial court's interest in ensuring that proceedings are "conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 US at 160.

Notably, the GAL had been specifically tasked with determining JO's exact wishes with respect to the jury trial issue. In her report following her meeting with JO, she wrote:

> I believe that [JO] now understands his right to a jury trial and wants a jury trial. However, [JO] never had that conversation with Mr. Zamborowski at all, let alone prior to Mr. Zamborowski filing the jury demand in this matter. In addition, given [JO's] clear prejudice against the judge simply based on other people's statements to [JO], I believe it would be in [JO's] best interest to have a jury trial so that he does not feel that this Court made a biased decision in this matter.

Following the submission of that report, the trial court ordered that Zamborowski could resume contact with JO. Altogether, Zamborowski was prohibited from contacting JO with respect to the jury issue for a period of 21 days.[1] The extremely limited scope and duration of the no-contact order suggests that the trial court took great care when balancing JO's rights to counsel and trial by jury with the trial court's interest in ensuring that the proceedings were conducted within the ethical standards of the profession and appeared fair to all who observed them. For these reasons, the trial court did not commit an error, and we decline to vacate the trial court's orders made during that three-week period.

## VI. CONCLUSION

In conclusion, we reverse the trial court's finding of criminal contempt both because the evidence was insufficient to support such a finding and because Zamborowski's due-process rights were violated insofar as the trial court failed to furnish sufficiently detailed factual support for the charges against him. We remand to the trial court to vacate the judgment of contempt and dismiss.

We further find that the trial court's comments throughout both Zamborowski's contempt proceedings and the underlying guardianship matter demonstrate apparent bias and therefore order that any additional contempt proceedings stemming from this matter, to include two show cause orders encompassing three additional bases for possible contempt of court,[2] be adjudicated by a different trial court judge. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Michael J. Kelly

---

[1] Zamborowski is incorrect to assert, as he does in his brief on appeal, that the order prohibited him from determining whether JO wanted to seek a change of temporary guardian; from determining whether JO wanted to seek superintending control; and from addressing the allegedly unlawful recordings created by JO's son, Michael.

[2] Order to Show Cause, August 6, 2025; Amended October 6, 2025.